# OVERBY v. GORDON.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 168. Argued March 5, 1900. — Decided April 9, 1900.

The amount of the estate, as a whole, was the matter in dispute below, and it amounted to sufficient to give this court jurisdiction.

The sovereignty of the State of Georgia, and the jurisdiction of its courts at the time of the grant of letters of administration on the estate of Haralson did not extend to or embrace the assets of the decedent situated within the territorial jurisdiction of the District of Columbia; and while the De Kalb county court possessed the power to determine the question of the domicil of the decedent for the purpose of conclusively adjudicating the validity within the State of Georgia of a grant of letters of administration, it did not possess the power to conclusively bind all the world as to the fact of domicil, by a mere finding of such fact in a proceeding in rem.

Pending proceedings for the appointment of an administrator in the District of Columbia, the personal assets of the deceased there situated were delivered up to the administrator appointed by the Georgia court. The trial court declined to rule that their delivery operated to protect those who made it as against an administrator appointed within the District. Held that this was a proper ruling.

The act of Congress of February 28, 1887, c. 281, has no relation to a case of this kind.

THE proceedings under review originated in the Supreme Court of the District of Columbia, by the filing in that court, on January 23, 1896, of a petition on behalf of Mrs. Gordon, the appellee herein. The object of the petition was to obtain the probate, as the last will and testament of Hugh A. Haralson, of a paper purporting to have been executed by Haralson, a copy of which is set out in the margin hereof,[1] and to obtain

[1] SAVANNAH, GA., August 14, 1895.

It is my will and desire that after my death the interest on my bonds be for the sole use and benefit of my sister Mrs. Fannie Gordon, and that after her death the interest on my bonds be for the sole use and benefit of her daughter and my niece Carrie Lewis Gordon.

It is my will and desire that none of my securities be sold or the investment changed until they mature.

a grant of letters of administration thereon, with the will annexed. It was averred that Haralson, at the time of his death and for several years prior thereto, had been a resident of the District of Columbia, and that he died on August 23, 1895, in the county of De Kalb, State of Georgia, possessed of personal property of the value of about ten thousand dollars, all of which, except an insignificant part thereof, was at the time in the District of Columbia. It was further averred that Haralson left surviving, as next of kin, three sisters, and four children of a deceased sister, and that all said next of kin, except the eldest sister (Elizabeth S. Overby), resided in the State of Georgia. Subsequently, on March 6, 1896, a caveat was filed, purporting in the body thereof to be on behalf of all the next of kin of the decedent other than Mrs. Gordon, but not signed by Mrs. Overby, contesting the validity of the alleged will and the claim that the deceased was at the time of his death a resident of the District of Columbia, and averring that at the time of his death Haralson was a citizen and resident of the State of Georgia.

On April 10, 1896, issues were framed upon the matters put at issue by the caveat and were ordered to be tried by the court, sitting as a Circuit Court, and a jury. The questions presented for decision were as follows:

" 1. Was the said deceased at the time of his death a resident of the District of Columbia?

" 2. Was the said deceased at the time of his death a citizen and resident of the State of Georgia?

" 3. Was the said deceased at the time of the making of the paper writing purporting to be his last will and testament a resident of the District of Columbia?

" 4. Was the said deceased at the time of the making of the paper writing purporting to be his last will and testament a citizen and resident of the State of Georgia?

" 5. At the time of his death did any considerable part of

---

If Carrie Gordon should have no children at her death, these securities, with the residue of my estate, to be divided to my heirs at law.

HUGH HARALSON.

Witness: CHAS. A. MACATEE.

the personal estate of the said deceased lie within the District of Columbia?"

A trial of these issues, however, was not had until February, 1898. At said trial the caveators were represented by attorneys. From a bill of exceptions contained in the record before us it appears that Mrs. Gordon introduced evidence tending to show that both at the date of the testamentary paper in controversy and at the time of his death Haralson was a resident of the District of Columbia. Mrs. Gordon rested her case after the following admissions were made by counsel for caveators:

1. That at his death Haralson had on deposit in two banking institutions in the District of Columbia money and securities approximating nine thousand dollars in amount and value, which was the entire estate of the decedent, with the exception of about two hundred dollars found outside of said District; and,

2. That said assets within the District of Columbia had been removed therefrom by Logan Bleckley, (one of the caveators,) claiming to act as administrator of the estate of said decedent, under grant of letters issued in May, 1896, by a court of the State of Georgia, pursuant to proceedings initiated in said court on April 6, 1896.

It is recited in the bill of exceptions that "to sustain the issues on their part joined," the caveators offered in evidence a certified transcript of record from the De Kalb Court of Ordinary, De Kalb County, in the State of Georgia. This record showed the appointment in May, 1896, of Logan Bleckley as administrator.

It is further recited in the bill of exceptions that the transcript referred to was offered as tending to show that the decedent had died a resident of De Kalb County, Georgia, intestate, "and that Mrs. Gordon was thereby estopped to deny that fact." The trial court, however, refused to admit the record in evidence, and an exception was duly taken to such refusal. The jury answered "Yes" to the first, third and fifth questions submitted to them, and "No" to the second and fourth questions, thus sustaining the contentions of Mrs. Gordon. The answers were certified to the Orphans' Court, and thereupon an order was entered admitting the will

to probate and record as the last will and testament of the decedent, and letters of administration *cum testamento annexo* were decreed to issue to Hugh H. Gordon, a son of the petitioner. An appeal was thereupon taken by the caveators to the Court of Appeals of the District of Columbia. That court affirmed the order of the lower court, (Mr. Chief Justice Alvey dissenting,) (13 App. D. C. 392,) and a writ of error was then sued out from this court.

*Mr. Samuel F. Phillips* for plaintiffs in error. *Mr. Frederic D. McKenney* was on his brief.

*Mr. Charles Cowles Tucker* and *Mr. Henry E. Davis* for defendant in error.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

Counsel for defendant in error urge in their brief an objection to the jurisdiction of this court, which we shall first consider and dispose of.

It is claimed that the writ of error should be dismissed " because the interests of the plaintiffs in error in respect of the judgment of the Court of Appeals of the District of Columbia, to which said writ of error was directed, are several, and the matter in dispute, exclusive of costs, as to no one of the said plaintiffs in error, exceeds the sum or value of five thousand dollars."

By act of February 9, 1893, c. 74, 27 Stat. 434, this court was authorized, among other things, to review a final judgment or decree of the Court of Appeals of the District of Columbia in any case where the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars. What, therefore, was the matter in dispute in this controversy? The answer manifestly is that it was whether an estate valued at more than nine thousand dollars should pass in the mode provided in an alleged last will and testament, which, in effect, excluded the next of kin of the decedent from the enjoyment of the principal of the

estate, or in the mode provided by the law of the domicil of the decedent for the transmission of an intestate estate. On the one hand was Mrs. Gordon, a sister of the deceased, and representing the interests under the alleged last will, asserting the validity of that document, and opposed to her were the plaintiffs in error, some of the next of kin of the deceased, interested in establishing his intestacy. Had the trial court admitted in evidence the transcript of record from the De Kalb court, and given it the conclusive force contended for, it would seem beyond question that as to those interested in upholding the validity of the alleged will, the value of the estate affected by that instrument would have been the matter in dispute. The matter in dispute necessarily must be the same as to the unsuccessful next of kin who are prosecuting this writ of error, and the amount of whose several interests in the estate of the decedent was not a question litigated below. The case is analogous in principle to that of *Shields* v. *Thomas*, 17 How. 3. In that case it was held that where the representatives of a deceased intestate recovered a judgment against an administrator for an amount in excess of the sum necessary to confer jurisdiction to review, and such recovery was had under the same title and for a common and undivided interest, this court had jurisdiction, although the amount decreed to be distributed to each representative was less than the jurisdictional sum. In the case at bar, the contestants below sought not an allotment to them of their interests, if any, in the estate, but an adjudication that the alleged last will and testament possessed no validity, and that contention was advanced by virtue of a claim of common title in the next of kin of the decedent to the *corpus* of the estate, such title, if any, being derived from the law of the alleged domicil of the deceased. In this aspect, the amount of the estate was the matter in dispute. *New Orleans Pacific Railway* v. *Parker*, 143 U. S. 42, 51–52, and cases there cited. There is therefore no merit in the objection to the exercise of jurisdiction.

Coming then to the merits of the controversy, we find presented for our consideration the single question, Was the grant of letters of administration by the Court of Ordinary of De Kalb

County, Georgia, competent evidence upon the issue tried in the Supreme Court of the District of Columbia respecting the domicil of the decedent at the time of his death?

In determining this question it is important to keep in mind the following facts:

At the time when the proceedings before the De Kalb court were instituted, (April, 1896,) the estate of the deceased, with but a trifling exception, was within the District of Columbia. Not only this, but upon the ground that the domicil of Haralson at his death was the District of Columbia, the jurisdiction of a competent court of the District had been invoked as early as January 23, 1896, for the probate of an alleged last will and testament of Haralson and for the grant of letters of administration *cum testamento annexo ;* and on March 6, 1896, the next of kin, other than the proponent of the alleged will, had filed a caveat in said court of the District of Columbia contesting the application for probate and grant of letters. Four days before the certification of issues framed by reason of such contest, to be tried before a jury, the caveators before the Supreme Court of the District of Columbia initiated the proceedings before the De Kalb County Court. It was upon the hearing had in the Supreme Court of the District of Columbia upon the issues certified on April 10, 1896, that the adjudication of the De Kalb County Court was offered in evidence upon the issue in respect to the domicil of the decedent at his death.

The transcript of record exhibiting such adjudication consists of : 1, an unverified petition of Logan Bleckley, as one of the next of kin and heirs at law of Hugh A. Haralson, asking that letters of administration be granted upon the estate of said deceased, upon the ground that he was a resident of the county of De Kalb at his death, and had died intestate, "leaving an estate, undevised, of real and personal property of the probable value of ten thousand dollars ;" 2, consents of certain of the next of kin to the appointment of Bleckley; 3, the order of appointment ; and, 4, the oath of office of the administrator, in which is embodied an averment that the decedent died intestate, so far as affiant knew or believed.

By section 3393 of the Georgia Code of 1895 an application

for grant of letters of administration was required to be made to the ordinary of the county of the residence of the deceased, if a resident of the State, and if not a resident, then in some county where the estate or a portion thereof was situated.

The next section, prescribing the notice to be given of an application, reads as follows:

"SEC. 3394. (2503.) *The citation.* The ordinary must issue a citation, giving notice of the application to all concerned, in the gazette in which the county advertisements are usually published, once a week for four weeks, and at the first regular term after the expiration of that time, the application should be heard or regularly continued."

The order of appointment is recited to have been made at the May term, 1896. It reads as follows:

"The petition of Logan Bleckley for letters of administration on the estate of Hugh A. Haralson, deceased, having been duly filed, and it appearing that citation therein was issued and published according to law, requiring all concerned to appear at this term and show cause, if any they could, why said letters should not be granted; and it also appearing that said deceased died a resident of said county, intestate, and that said applicant is a citizen of this State and lawfully qualified for said administration, and no objection being offered thereto, it is therefore ordered by the court that the said Logan Bleckley be, and he is hereby, appointed administrator on the estate of said deceased, and that letters issue to him as such, upon his giving bond, with approved security, in the sum of twenty thousand dollars, and taking and subscribing the oath as provided by law."

As said by this court in *Veach* v. *Rice,* 131 U. S. 293, courts of ordinary in Georgia are courts of record, having exclusive and general jurisdiction over the estates of decedents, and no question has been raised as to the observance of the requirements of the statutes of Georgia in the proceedings which culminated in the appointment of the Georgia administrator.

The transcript referred to, however, undoubtedly only justifies the inference that none other than the statutory notice by publication was given, and that no contest was had in respect to the grant of letters.

Jurisdiction is the right to hear and decide, and it must be exercised, speaking in a broad sense, in one of two modes — either *in rem* or *in personam.*

It will be observed that the statutory notice above referred to was not required to be directed against named individuals nor had it for its object the obtaining of specific relief against any one, but it was to be general, and its purpose was to warn all persons that it was proposed by the court of ordinary to determine whether a legal representative should be appointed to administer the property of the deceased within the State of Georgia. The notice and proceeding was obviously intended to have no greater force or efficacy against persons resident in the State of Georgia than against individuals who might be resident without the state. It results that the proceedings referred to were not intended to constitute and did not amount to an action *in personam.* This results from the fact that they were devoid of the elements essential to an action *in personam ;* and, if not proceedings purely *in rem*, they possessed so much of the characteristics thereof, as not to warrant the allowance of greater efficacy than is accorded to a proceeding of that nature.

An essential characteristic, however, of a proceeding *in rem* is that there must be a *res* or subject-matter upon which the court is to exercise its jurisdiction. In cases purely *in rem*, as in admiralty and revenue cases for the condemnation or forfeiture of specific property, a preliminary seizure of the property is necessary to the power of the court to adjudicate at all. In other cases, where the proceedings are in form *in personam*, but the court is unable to acquire jurisdiction of the person of the defendant, by actual or constructive service of process, the action may proceed, as one *in rem* against the property of which a preliminary seizure or its equivalent has been made; or, jurisdiction may be exercised without such preliminary seizure, where the relief sought is an adjudication respecting the title to or validity of alleged liens upon real estate situate within the jurisdiction of the court. *Roller* v. *Holly*, 176 U. S. 398. To the class of cases where the proceedings are in form *in rem* may be added those connected with the grant of letters either testamentary or of administration.

From the record of the proceedings instituted in the De Kalb County Court it is apparent that the ultimate purpose was to adjudicate upon and decree distribution of the estate of the deceased, the appointment of an administrator being a mere preliminary step in the management and control by the court of assets of the estate. The question of domicil would seem to have been important only as establishing the particular court of ordinary which was vested with jurisdiction to administer the assets within the State of Georgia. The subject-matter or *res*, upon which the power of the court was to be exercised, was, therefore, the estate of the decedent.

The sovereignty of the State of Georgia and the jurisdiction of its courts, however, did not extend to and embrace property not situated within the territorial jurisdiction of the State. To quote the language of Mr. Chief Justice Marshall in *Rose* v. *Himely*, 4 Cranch, 241, 277:

" It is repugnant to every idea of a proceeding *in rem* to act against a thing which is not in the power of the sovereign under whose authority the court proceeds; and no nation will admit that its property should be absolutely changed, while remaining in its own possession, by a sentence which is entirely *ex parte*."

As said also in *Pennoyer* v. *Neff*, 95 U. S. 714, 722:

"Except as restrained and limited by the Constitution, the several States of the Union possess and exercise the authority of independent States, and two well established principles of public law respecting the jurisdiction of an independent State over persons and property are applicable to them. One of these principles is, that every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory. . . .

"The other principle of public law referred to follows from the one mentioned; that is, that no State can exercise direct jurisdiction and authority over persons or property without its territory. (Story, Confl. Laws, c. 2; Wheat. Int. Law, pt. 2, c. 2.) The several States are of equal dignity and authority, and the independence of one implies the exclusion of power from all others. And so it is laid down by jurists, as an elementary principle, that the laws of one State have no operation out-

side of its territory, except so far as is allowed by comity; and that no tribunal established by it can extend its process beyond that territory so as to subject either persons or property to its decisions. 'Any exertion of authority of this sort beyond this limit,' says Story, 'is a mere nullity, and incapable of binding such persons or property in any other tribunals.' Story, Confl. Laws, sect. 539."

Now, it is undeniable that the sovereignty of the State of Georgia and the jurisdiction of its courts at the time of the adjudication by the De Kalb County Court, by the grant of letters of administration on the estate of Haralson, did not extend to or embrace the assets of the decedent situated within the territorial jurisdiction of the District of Columbia, and, viewed as a step in a proceeding *in rem* relating to property within the jurisdiction of the court, the adjudication of a grant of letters would have no binding probative force in contests respecting property lying outside of the territorial dominion of the State of Georgia. The decision in *Robertson* v. *Pickrell*, 109 U. S. 608, and in the cases there relied upon, furnish illustrations of this principle. Thus, in the case just named, it was held that the act of Congress declaring the force and efficacy which the records and judicial proceedings of one State should have in the courts of another State did not require that they should have any greater force and effect in another State than in the State where such records and judicial proceedings originated and were had; that the probate of a will in one State, by a proceeding not adversary in character, merely established its sufficiency to pass all property which could be transferred in that State by a valid instrument of that kind, and the validity of the will in that State; and that such probate did not conduce to establish the facts upon which the probate proceeded, in proceedings respecting real property situated in another State, except as permitted by the laws of such other State.

The reasoning upon which we base the conclusion that the transcript of record of the grant of letters by the De Kalb County Court was not entitled to probative force in the courts of another State in the controversy over the administration of assets not within the territorial jurisdiction of the State of Geor-

gia, at the time the grant of letters was made, finds support in the opinion delivered by Lord Blackburn in *Concha* v. *Concha*, 11 App. Cas. p. 541, a case referred to in terms of approval in *Thormann* v. *Frame*, 176 U. S. 350, where was involved a controversy in some of its features analogous to that presented in the case at bar. The facts in the *Concha case* were as follows:

After contest between a daughter of a decedent and the executors named in a document which purported to be a last will and testament, the paper was admitted to probate by a judge of a probate court in London, and he expressly decided, upon an issue framed in a contest between the daughter and executors as to the domicil of the decedent, in favor of the domicil being in England, and not in Chili, as was claimed by the daughter. In a subsequent action before the Court of Chancery for distribution of the assets, the daughter again sought to litigate the question as to the domicil of her father, and her right to do so was finally adjudicated by the House of Lords. The executors or those who had succeeded them in the management of the administration suit attempted to avail of the decree of the probate court as conclusive upon the question of domicil, first, as a proceeding *in rem*, which operated an estoppel against all the world; and, second, as a proceeding *inter partes*, operative as *res adjudicata*, by reason of the actual contest made by the daughter. The decree of the probate court, however, was held not conclusive *in rem* as to the domicil, because the finding as to domicil was not necessary to the decree of the judge of probate, nor conclusive *inter partes*, as the pending controversy was substantially between the daughter and the residuary legatee, and as the latter could not be bound by an adjudication upon a question not necessary to be litigated in the probate court, and as estoppels must be mutual, the daughter could not be bound. This decision of the House of Lords, it will be borne in mind, was as to the effect to be given in one judicial tribunal in England to the decision of another court of the same country. In the course of his opinion, Lord Blackburn (who perhaps had in mind doubts intimated in the Court of Appeals, 29 Ch. D. 268, 276, as to whether the findings on which a judgment *in rem* is based, are in all cases conclusive against the world) said (p. 562):

"What he (the Probate Judge) did decide was (and to that extent I think the decision was conclusive on everybody,) that there was an executor who was entitled to have probate in England for the purpose of getting in and taking the property which was in England, and to that he was entitled if there was a will which made that executor a good executor according to the law of England ; but I do not think that Sir Creswell Creswell had any power to say that the testator was or was not really a domiciled Englishman. If he had been a domiciled American or domiciled in any other country, I do not think that a decision of the judge of our probate court, saying : ' I find him to be a domiciled Englishman, and, therefore, on that account grant probate,' would be at all conclusive upon the court of another country to oblige them to admit that he was a domiciled Englishman, when in fact he was not ; or, putting it the converse way, that if a Chilian court had chosen to say that some very wealthy man was a domiciled Chilian, and had therefore granted probate, the law of nations would require that to conclude any person from saying in this country that he was not so."

Again, after referring to the fact that upon the executor proposing to prove the will, a caveat was entered upon which it was said the probate judge entered into an inquiry whether or not the testator was domiciled in England, and found that he was, Lord Blackburn observed (p. 564) :

"It is said that upon the caveat in the suit an order was drawn up, which may perhaps not mean that, but which does look extremely as if the registrar entered the judgment that the judge did find it. I cannot think that if he had done that it would have bound everybody universally as being a judgment *in rem*. I have instanced a sort of illustration of it. Supposing he had done so, and supposing that he was wrong, and the fact was that the testator had not been really domiciled in England, but had been domiciled, say, in the United States, in New York we will suppose, could it possibly have been said that the court of New York (which undoubtedly would have the same general law of nations as we have, following the law of the domicil to distribute the property) would have respected the decision of the Judge Ordinary, it establishing that this

will was proved conclusively as being enough to make this person executor and the representative in England to obtain the English property—could it have been said that the Judge Ordinary having erroneously found that the testator was domiciled in England when in fact he was a domiciled citizen of the United States, it was to conclude them and conclude everybody to the fact that he was a domiciled Englishman until a foreigner had come to the court of this country to obtain a reversal? I cannot think so. If that was so, how could it as a matter *in rem* be decisive as regards the reason upon which the judge of the probate court had gone? I cannot think that it would be."

In *Blackburn* v. *Crawford's Lessee*, 3 Wall. 175, and a continuation of the same action under the title of *Kearney* v. *Denn*, (15 Wall. 51,) the sole question at issue in the action (ejectment) was the validity of an asserted marriage. At the trial the defendant offered in evidence, as a conclusive estoppel against all the lessors of the plaintiff and as *prima facie* evidence to support the issue on his part, a transcript from the records of the Orphans' Court of Prince George's County, Maryland, and proposed to read therefrom the verdict of the jury and the order of the Orphans' Court thereon on certain issues sent from the Orphans' Court to the Circuit Court of said county. These issues had been framed upon a contest, initiated in the Orphans' Court, by one of the lessors of the plaintiff who resisted an application of Blackburn for the grant to him of letters of administration on the estate of a certain intestate, such lessor asserting that he was nearest of kin to the intestate, and that letters should be granted to him. The verdict in the contest was against the validity of the claimed marriage. On the trial in the action in ejectment the jury found in favor of the fact of marriage. This court—the trial judge in the action in ejectment having excluded the transcript referred to—held that the decree upon the contest was competent evidence and operated an estoppel as against the lessor of the plaintiff who was a party to the contest, but that the adjudication did not affect the other lessors, who were not parties to such contest. Obviously, the decision proceeded upon the assumption that as the Orphans' Court possessed no general jurisdiction over the real

estate of a decedent, its action upon the application for grant of letters, regarded as a proceeding *in rem*, possessed no probative force in contests over such property. This, of course, in nowise impugned the principle that all parties to a contest, in proceedings in a probate court preliminary to and during the course of administration upon the estate of the decedent, upon a matter within the jurisdiction of the court, are concluded in every other court by the decision rendered, as to the facts upon which such decision necessarily proceeded. *Caujolle* v. *Ferrié,* 13 Wall. 465. And see *Butterfield* v. *Smith,* 101 U. S. 570.

We are of the opinion that the De Kalb County Court possessed the power to determine the question of domicil of the decedent for the purpose of conclusively adjudicating the validity within the State of Georgia of a grant of letters of administration, but that it did not possess the power to conclusively bind all the world as to the fact of domicil, by a mere finding of such a fact in a proceeding *in rem.* In other words, proceedings which were substantially *ex parte* cannot be allowed to have greater efficacy than would a solemn contest *inter partes,* which would have estopped only actual parties to such contest as to facts which had been or might have been litigated in such contest.

Our conclusion being that the adjudication of the fact of domicil in Georgia made in the grant of letters by the De Kalb County Court, and which was not made in a contest *inter partes,* was of no probative force upon the question of domicil in a contest in a court of the District of Columbia in the course of proceedings for the administration of assets within said District, it results that the Supreme Court of the District did not err in excluding the transcript in question, whether tendered as evidence conducing to establish or as conclusively fixing the domicil of the deceased. And this conclusion is not affected in the least by the circumstance that on the trial of the issue as to domicil had in the Supreme Court of the District of Columbia it was claimed that the assets within the District of Columbia at the time of the filing of the caveat by the next of kin had been thereafter, without the sanction of the court, removed from the District of Columbia by one of the caveators.

The trial court properly declined to rule that delivery of such assets operated to protect those who made the surrender, as against an administrator appointed within the District, subsequent, it is true, to such delivery, but as the result of proceedings for the appointment of an administrator which were pending in a proper court of the District at the time of the delivery and when the person in whose name the Georgia letters were issued was a party to the proceedings previously instituted and then pending in the District. Nor was the trial court required to determine that upon proper application to the Georgia court the administrator appointed by the court would not be ordered to deliver up the assets removed by him from the District.

Allusion has been made to an act of Congress of February 28, 1887, c. 281, 24 Stat. 431, which makes its lawful for any person or persons to whom letters testamentary or of administration may be granted by proper authority, in any of the United States or the territories thereof, to maintain any suit or action and to prosecute and recover any claim in the District of Columbia, in the same manner as if the letters testamentary or of administration had been granted to such person or persons by the proper authority in the said District. We do not construe that statute, however, as having any relation to a case of the kind we are now considering. In other words, the statute cannot in reason be interpreted as directing that where a proper court of the District of Columbia had obtained jurisdiction by proceedings commenced before it for administration upon property within the District, it should be obliged to dismiss such proceedings because one who was a party before it chose, whilst issues in such proceedings were pending and undecided, to go to a State and there make application for letters of administration, basing such application upon the asserted fact that the deceased had been domiciled in such State.

Whilst it may be conceded that, in consequence of the statute, as a general rule, a debtor residing in the District of Columbia, of a deceased person, may be protected in making payment to an administrator appointed in another jurisdiction, the asserted domicil of the deceased, *Wilkins* v. *Ellett*, 108 U. S. 256, this does not make it necessary for us to decide that the payment

or delivery of the assets in the District of Columbia, which was made to the Georgia administrator after the commencement of proceedings for the administration of the assets within the District of Columbia, based upon the ground of the domicil of the deceased having been in said District, was lawful. To determine this question would involve a consideration of other provisions of the statute, and as to whether the person making the payment was or not to be charged with notice of the then pending proceedings in the Supreme Court of the District, which, of course, were matter of public record. The question, however, is not before us for review, and we do not, therefore, express an opinion in regard thereto.

Further, in the light of the decision of the Supreme Court of Georgia in the case of *Thomas* v. *Morrisett*, 76 Georgia, 384, and an analogous decision by the Supreme Court of Errors of Connecticut, in *Willett's Appeal from Probate*, 50 Conn. 330, it would seem altogether probable that the De Kalb County Court, upon application made to it, will order its appointee to surrender to the administrator appointed in the District of Columbia the assets which were by the former removed from the District during the pendency therein of the proceedings for administration.

Finding no error in the record, the judgment of the Court of Appeals of the District of Columbia is

*Affirmed.*

MR. JUSTICE BROWN concurred in the result.