Mr. Chief Justice Shedpard
delivered the opinion of the-Court:
1. The first exception to the auditor’s report is to the allowance to the trustees of 5 per cent commissions on the principal, and 10 per cent on the income of the estate. There is no statute in the District regulating the compensation of trustees, and the matter of allowance therefor is within the sound discretion of the equity court. The rule prevailing in the United States in this respect is different from the rule governing in England. Here “it is considered just and reasonable that a trustee should receive a fair compensation for his services; and in most cases it is gauged by a certain percentage on the amount of the estate.” Barney v. Saunders, 16 How. 535-542, 14 L. ed. 1047—1050. The commissions allowed in that case-were 5 per cent on principal, and 10 per cent on income. Discussing the rate, Mr. Justice Grier said: “The allowances as made by the Auditor in this case are, we believe, such as are customary in Maryland and this District, where the trustee *538 has performed his duty with honor and integrity.” The commissions allowed in this case being within the power of the Auditor, it was his duty to determine from the evidence before him regarding the character of the services performed by the trustees, what would be a reasonable and fair compensation therefor. It is a well-established doctrine that the report of an Auditor, that has been confirmed, should be permitted to stand unless there is some obvious error or mistake therein. Richardson v. Van Auken, 5 App. D. C. 209—218; Grafton v. Paine, 7 App. D. C. 255, 256; Smith v. American Bonding & T. Co. 12 App. D. C. 192-198; Hutchins v. Munn, 28 App. D. C. 271, 279, S. C. 209 U. S. 246-250, 52 L. ed. 776-778, 28 Sup. Ct. Rep. 504; France v. Coleman, 29 App. D. C. 286-293.
It appears that it had been the practice of the testator for some years before his death,- to invest his money in loans of comparatively small amounts, secured by second mortgages on real estate in the District of Columbia. Many of the notes were payable monthly. At the time of his decease these investment notes constituted the larger part of his entire estate, and the bulk of his personalty. The first report of the former Auditor, in 1900, to which no exception seems to have been taken, allowed the trustees 10 per cent commission upon the income of the estate. The grounds upon which this allowance was made were thus stated in the report :
“These collections and their disbursement form but a part of the service imposed upon these trustees and a much smaller part of their responsibility. I have taken into consideration the magnitude of the principal, personal estate, and its shifting character as illustrated by the conversion of more than one half of the promissory notes into money during the period of this account, and the reinvestment of the funds in other safe, interest-bearing securities, as well as the discharge of nearly $30,000 of liens upon the real estate. The compensation allowed in this report is less than the value of the service, but no more is claimed by the trustees.”
*539 Like reasons were assigned by the Auditor in the report under consideration.
Without consuming time with the review of the evidence relating to the administration of the trust, we think it suffi■cient to say that while the allowance was a liberal one, it is not obviously excessive, nor has it been shown to be founded •on a mistake that, under the rule before stated, would justify .the setting aside of the report on the exception taken.
2. The next exception relates to the item of $18,800 allowed in the settlement of the final account of the executors by the probate court of Massachusetts. This amount is scheduled in the first report of the Auditor, returned December 17 th, 1900, as deducted from the trust estate charged to the trustees. In •other words, they were in effect charged with the net balance ■shown by that account as received from the executors. In the final report, the Auditor expressed the opinion that he had no ■power under the reference to reopen the account settled by his predecessor. Another ground assigned was that the equity •court had no power to inquire into, or set aside, the settlement made by the probate court. This report was based on the consideration that the administration and the responsibility of the “trustees, under the appointment of that court, extended only to the net balance ordered to be delivered to them by the probate court.
Appellants contend that the probate court of Massachusetts Lad no jurisdiction to probate the will, because the testator was ■domiciled in the District of Columbia; that its proceedings are void, and that the trustees are chargeable with the entire estate as it existed on April 1st, 1899, when the decree appointing the trustees was entered. It appeared that the testator had some real estate in Middlesex county, Massachusetts, and this gave jurisdiction to its court to probate the will, and, at least, to .•administer such of the estate as was in that state. A prima facie ground of jurisdiction was afforded by the recital in the will that the testator was both a citizen and an inhabitant of Massachusetts, which fact the executors confirmed by offering the will for probate. Whether this is a collateral attack on the *540 judgment of this court, which will not be entertained (see Richmond & D. R. Co. v. Gorman, 7 App. D. C. 91-106), is a question that does not necessarily arise. However that may be, the adjudication of domicil was not conclusive' of that fact in a proper proceeding in the courts of the District of Columbia, or of their right to administer such of the estate as was actually within their jurisdiction. Overby v. Gordon, 13 App. D. C. 392-413, S. C. 177 U. S. 214-227, 44 L. ed. 741—746, 20 Sup. Ct. Rep. 603. There were no creditors in the District, and the only persons interested were the child and grandchildren of the testator, for whose benefit the trust was-created. No offer was ever made to probate the will in the District of Columbia, which was necessary to confer power on the executors to administer the estate therein. The only source of their authority was the order of the Massachusetts court admitting the will to probate, and issuing the letters testamentary which they received. They, submitted the entire personal estate (consisting chiefly of loans evidenced by notes and secured by mortgages in the District) to the appraisers appointed by that court, and administered the same under its-authority from the date of probate,—October, 1896,—until delivered to the trustees appointed by the decree of the equity court in April, 1899. Whether this voluntary submission by the executors of the personal estate in their actual possession, which was acquiesced in by the adult beneficiary and the guardian of the infant beneficiaries, to the administration of the Massachusetts court, constituted such an actual removal of the same to that State so as to bring it under the complete jurisdiction of that court, suggests another question that we need not decide. There is no conflict of jurisdiction between the probate courts of the two jurisdictions, for, as we have seen, there has never been an attempt to probate the will in the District. It is to be remembered that the immediate purpose of filing the bill to procure administration of the trust was to escape from taxation in the state of Massachusetts for the new taxing year about to begin. The allegations of the bill-- that testator was domiciled in the District, that his personal estate *541 was situated there, and that the probate court of Massachusetts had no jurisdiction to probate the will and administer the estate, were in line with the main purpose and contentions in the pending suits in that state for the taxes of the two preceding years. There was no denial of these allegations by the executor, Drury, who- was the only defendant before the court. The reason assigned by him for the probate was that immediately after the burial of the deceased, he delivered the will to George F. Eichardson, a brother of testator and one of the executors nominated by him, who stated that it was testator’s wish that his will should be probated in Massachusetts. Defendant consented thereto, not being advised that there was any question of jurisdiction, and relying in that behalf upon the said Eichardson, who was a lawyer of learning and distinction in that state. Assuming it to be true, as alleged, that said George F. Eichardson had declined to act as trustee of the estate, he -consented to the appointment of another in his stead. No attack was made in the bill upon the administration of the estate for the intervening period. The prayers were that the will may be construed and the rights of plaintiffs thereunder ascertained; that an account be taken of all the property and assets which have been received by the defendant Drury as “executor and trustee” under the will, since he qualified as such executor, without abatement for assessments and taxes claimed by the state of Massachusetts; that defendant, as “executor and trustee,” be required to file accounts from time to time; that some fit person be appointed in stead of George F. Eichardson to carry out the trusts created by said will; and that defendant be restrained, in the meantime, from paying out any money in his hands for dues and taxes to the state of Massachusetts. The restraining order was at once issued. The decree rendered thereon continued the restraining order. It then recited that the testator was last domiciled in the District of Columbia, that the beneficiaries are there domiciled also, and then appointed Drury and Maddox trustees to perform the trusts created by said will, empowering them to receive from “the executors named in said will all of the property whereof the *542 said deceased died seised and possessed.” No express adjudication was.made as to the jurisdiction of the Massachusetts, court, or as to the acts of the executors in offering the will for-probate there, and subjecting the personal property to appraisement and administration thereby. That there was no such, intended adjudication was the construction put upon it by all of the parties interested. The then appointed substitutetrastee, Maddox, had filed the bill as solicitor for the plaintiffs. Within the month thereafter Drury and Richardson, as executors, filed an account in the probate court showing their administration of the estate. Their petition recited the facts concerning the probate of the will, the interests of beneficiaries, and the-decree of the equity court aforesaid appointing trustees. It further stated that at the time of his decease the testator was not domiciled in Massachusetts, and that his will, instead of' being probated in Massachusetts, should have been probated in. the District of Columbia; and that the probate was the result of mistake. They prayed an order authorizing them to deliver the trust funds in their hands to the said trustees, and that they be discharged from further responsibility. The account rendered, among other items of credit for collections, payments,, etc., contained the item for expenses of administration, aggregating $18,800, that is now in question. An indorsement on; said account to the effect that the same had been examined, and was requested to be allowed without further notice, was signed-by the then infant beneficiaries, by their guardian, Alexander-F. Magruder, who was also their father, and by Maddox and Drury, trustees. Drury, it is true, was approving his own account, but Maddox had no special concern therein, save as representing the beneficiaries. The court entered an order approving the account and directing the executors to deliver the-estate to the trustees. On the back of this account, Maddox and Drury, trustees, executed a receipt to the executors for the items of cash and other personal property shown by the account to be in the hands of the executors. Thereafter, on October 18,. 1899, the order was made by the equity court requiring the Auditor to report the amount and character of the estate of.' *543 which the testator died seised and possessed, and to state the-account of the executor and trustees under the will of the-deceased.
The auditor’s report, heretofore referred to as made December 19, 1900, returned an account showing the credit made by the Massachusetts court, and'charging the trustees with the balance shown by that account. No exception was made to this-report, and it stood confirmed under the rules of the court. Four other reports were made, and no exception was taken to-the recognition of the old account as the basis of the liability of the trustees. No attack was made upon the settlement of the account in Massachusetts, and no complaint made that the trustees were responsible for the entire estate of the testator-without diminution to the extent of the allowances made to the-executors in the settlement of their account by the probate court.
It is to be noted, too, that the active administration of the estate had been in the hands of the executors for more than two-years prior to the settlement of this account. Many collections of debts had been made and many reinvestments of money. The real estate was also being looked after, taxes were paid,, and litigation had been maintained with the state of Massachusetts on her claim for taxes for the years 1897 and 1898,— litigation that finally ended in favor of the executors after the settlement of this account. While it is contended that under the decree of the equity court the executors were required to turn over all of the estate of which the testator died seised and. possessed, and that the trustees became responsible therefor, all of the credits allowed in the account were accepted as-determining the amount for which the trustees should be held-to account, save and except the item of $18,800, allowed them for expenses of administration. The first objection made to this item, as we have seen, was in the exceptions to this final report and settlement.
In this connection another point suggests itself as entering-into the consideration. Under the law in force when the testator died, there was no provision for the probate of a will as- *544 to real estate, in this jurisdiction; but wills of personalty were .authorized and required to be probated. The equity court had no jurisdiction to probate a will, and to establish and enforce one as to personalty. Whatever may be the latitude of the rights and powers of executors of unprobated wills by the rules of the common law, or whatever may be the limitations thereof resulting from our probate statutes, it is quite certain that they had no power to administer a trust of personal property created by will, without its probate in due form. As there was no probate in the District, the authority of the executors necessarily rested in the probate and letters testamentary of the Massachusetts court; and it was as such executors that they were brought before the court, and directed to deliver the property to the trustees appointed to administer the trusts in that will. The conditions recited, and the acquiescence of all the parties at interest in the proceedings and orders of the Massachusetts court, are sufficient, in our opinion, to stop them now to impeach the settlement made by that court of the accounts •of the executors, and of the balance required to be delivered to the trustees. We think the auditor and the court were right, therefore, in refusing to review that account, reject the allowance therein made, and charge the item to the trustees as part of the trust fund received by them.
This disposes also of the contention that this allowance for •expenses of administration should have been considered as an ■element of the amount of compensation allowed to the trustees in the final settlement, the basis of which was the net balance received by them from the executors as shown in the Mass; achusetts settlement. No credit was made them, or to Drury, for services prior to the commencement of administration under the appointment of the equity court of this District.
3. The only attack made upon the fairness of the administration of the trustees occurs under the exception to the auditor’s report, on the ground that he failed to ascertain and charge the trustees, as he should have done, with certain profits alleged to have been realized by them in the purchase of certain notes for reinvestment of the trust funds.
*545 The facts upon which the contention is founded are these: That Drury was a member of the partnership of Arms and Drury, and that, for the purpose of reinvesting the funds of the trust, the trustees purchased many notes, aggregating large sums, from said partnership. The evidence shows that these purchases were made at par with any accrued interest, that the notes were good, and nothing had ever been lost on them. It appears that- Arms and Drury had been engaged, as part of their real estate business, in lending money of their own to parties engaged in building houses, taking notes therefor secured by building contracts and mortgages. Upon these loans they made a profit varying from 1 to 2 per cent. No money of the trust was used in such loans. The profits of Arms and Drury from the transaction were derived from the original borrowers. No profits were made in selling the notes, which were all well secured, to the trustees, and the latter took them, at their face value, obtaining no profits therefrom.
It is true that a trustee should not deal with himself, and in any transaction with the trust fund, in which he has made a loss by such dealings, he should be held to the strictest account. If, on the other hand, he realized profits, he should be made to account fully for them. No principle is better settled than that a trustee shall not make a personal profit from the use of trust funds. We would not be understood as qualifying this salutary rule in the slightest degree; but we cannot perceive that it applies here. Grant that it would have been better for Drury not to make purchases for reinvestment from a partnership of which he was a member, and thereby avoid opportunity for criticism, yet it is clear that the notes were bought at their face and actual value, that no profit was made by the trustees, and that not a dollar was lost to the estate. Drury knew the character of the notes, and there was less trouble and expense in the investigation of titles than there would have been in the purchase of similar securities from others; nor does it appear that like securities could have been readily obtained from others. Moreover, the other trustee Maddox, had no connection with the partnership of Arms and *546 Drury. He was entirely disinterested, and there is no complaint against him other than that he concurred in the purchase of the securities.
Should the trustees jointly, or Drury singly, be charged in the settlement of their final account with any profit that Drury may have realized as a member of the partnership of Arms and Drury, from the original loans of the money of that firm, which formed the basis of the notes subsequently purchased in good faith by the trustees for the reinvestment of the trust funds ?
The trustees lost nothing on the notes and charged themselves with the exact amount paid for each. They paid no more than they would have done in the purchase of like notes from other persons engaged in the same business as Arms and Drury,, which persons would have realized a similar profit from their borrowers. We do not think that Drury, under any principle of equity, can be called on to surrender to his beneficiaries his profit made in previous transactions with other persons and at their expense, simply because he and his eotrustee subsequently purchased the paper in the securing of which those profits had been made, and in which purchases no profit was made, or expected to be made, at the expense of the estate. Dealings with the partnership of Arms and Drury by trustees, one of whom was a member of the partnership, call for the closest scrutiny of each and every such transaction, but when that scrutiny has disclosed no actual wrongdoing, no advantage taken of the situation, no profits made, and no possible injury to the-interests of the beneficiary, there is nothing calling for restoration by the supervising court. A pecuniary charge therefore, in the settlement of the account, would, under such circumstances, not be a restoration, but could be inflicted only by way of fine and punishment.
4. The last assignment of error relates to the decree of the-court which provides that when the trustees shall file vouchers showing the distribution and final disposition by them of the trust funds in their hands or shown by the auditor’s report, they shall be and are hereby discharged of and from their said *547 office of trustees under their said appointment by the court in this cause. Upon the confirmation of the auditor’s report, this was the proper decree to be entered. The objection to it, however, is that it also discharges them as trustees of what is known as the Eliza C. Magruder trust. It appears that prior to his decease, the testator had executed an acknowledgment of a trust in certain property in his hands, consisting of stocks and of real estate in the District of Columbia and the State of Missouri, for the benefit of Eliza C. Magruder, the beneficial estate to go at her death to the children of Alexander F. Magruder, who are the plaintiffs in this proceeding. By the decree of April 16, 1899, Maddox and Drury were also appointed trustees of this trust. Separate accounts of the administration of that trust have always been kept and reported. The account was before the auditor in this reference, and he settled the same separately. No exception was taken to that part of his report. It is evident that the court, in entering the decree, did not irr tend then and there to terminate the administration of that trust; but the form of the decree may be objectionable as warranting the construction given it by the appellants. The case has not been finally closed in the equity court, and its power to correct the decree in that respect is fully recognized.
So far as the decree confirms the auditor’s report of the account of the trustees of the administration of the trusts created by the will, it is affirmed, with costs. So far as the Eliza C. Magruder trust is concerned, the cause will be remanded, with leave and direction to the court to amend the decree in so far as it may relate thereto, and take such final action, regarding that trust estate as may be expedient and proper.

Affirmed.

An appeal to the Supreme Court of the United States was. allowed December 21, 1911.