**NATIONAL AUDUBON SOCIETY, INC.,**
Plaintiff,

v.

**Pearce JOHNSON et al., Defendants.**

**Civ. A. No. 69–C–209.**

United States District Court,
S. D. Texas,
Corpus Christi Division.

Sept. 30, 1970.

Branscomb, Gray, Thomasson & Hall (Richard A. Hall), Corpus Christi, Tex., for the plaintiff.

Lewright, Dyer & Redford (W. N. Woolsey), Corpus Christi, Tex., for Heldenfels Bros.

Crawford C. Martin, Atty. Gen., of Texas (Roger Tyler and Roland Allen, Asst. Attys. Gen.), Austin, Tex., for Pearce Johnson, L. P. Gilvin, Harry Jersig, J. R. Singleton and Robert G. Mauermann.

Small, Herring, Craig, Werkenthin & Shannon (C. C. Small, Jr.), Austin, Tex., for Lone Star Cement Corporation.

Bracewell & Patterson (Harold R. DeMoss, Jr.), Houston, Tex., for Parker Bros. & Co., Inc.

Dyche, Wheat, Thornton & Wright (E. H. Thornton, Jr.), Houston, Tex., for Horton & Horton, Inc. and Bauer Dredging Co., Inc.

## MEMORANDUM AND ORDER

GARZA, District Judge.

This suit was filed by the National Audubon Society, Inc., a New York corporation, authorized to do business in the state of Texas. The suit is for the purpose of having this Court stop the dredging of certain bays in the state of Texas for shell. It claims that this Court has jurisdiction of their cause of action under Title 28, Sections 1331, 1332, 2201 and 2202, of the United States Code. Those being sued are Pearce Johnson, the Chairman, and L. P. Gilvin and Harry Jersig, members, of the Texas Parks and Wildlife Commission. Other individual defendants are J. R. Singleton, the Executive Director, and Robert G. Mauermann, the Deputy Executive Director of said Commission. The Plaintiff alleges that none of them is being sued in their official capacities, but only as individuals. The other defendants in the suit which are hereafter being referred to as Dredgers, are Parker Bros. & Co., Inc., Horton & Horton, Inc. and Bauer Dredging Co., Inc., all Texas corporations authorized and licensed to do business in the State of Texas; Defendant Lone Star Cement Corporation, a corporation organized under the laws of the state of Delaware, but doing business in Texas, and Heldenfels Bros., which is a partnership in which all the partners are citizens and residents of the state of Texas. All defendants have answered and generally; besides filing motions for more definite statement, all defendants have filed motions to dismiss, stating various grounds therefor. A hearing on the motions was held on April 29, 1970,

after which the Plaintiff was granted permission to amend and the Defendants were granted time to answer and file briefs. The Plaintiff has amended its complaint and with the exception of the deletion of its claim that certain statutes of the state of Texas are unconstitutional, which had raised the need of the convening of a three-judge Court, its complaint is the same as its original complaint. What is before the Court at this time are the various motions to dismiss.

The Plaintiff, National Audubon Society, Inc., is a non-profit membership corporation which, since 1905, has devoted its time to the preservation, conservation and improvement of the various forms of wildlife and their natural environment and habitat in the United States. Their reputation for their interest in ecological endeavor is well known throughout the United States. At the time the suit was filed, the Society had not obtained a permit to do business in Texas, but it obtained such permit after this suit was instituted. The Plaintiff operates and maintains a wildlife sanctuary on the Second Chain of islands located in Ayers Bay, Aransas County, Texas. The property was leased from the State of Texas, on September 16, 1955, for a period of fifty years, at a cost of Ten Dollars ($10.00) per year. The lease has thirty-five more years to run and it claims that its leasehold interest is worth over $10,000.00. The Plaintiff additionally operates a wildlife sanctuary on a portion of what is known as Matagorda Island, which borders on San Antonio Bay, Ayers Bay and Mesquite Bay in Calhoun and Aransas Counties, Texas. The National Audubon Society, Inc. is the lessee of this property under a lease agreement executed by the American Liberty Oil Company, dated October 11, 1960, and under a sublease by T. L. Wynne, dated March 1, 1961. The said leases are in full force and effect at the present time, but the Plaintiff pays no monetary consideration for said leases. The Plaintiff is apparently further asserting that it is trying to protect the Aransas National Wildlife Refuge, which borders upon San Antonio Bay, Ayers Bay and Carlos Bay in Aransas and Calhoun Counties. The Refuge was established under Federal Law and is owned by the United States of America and operated and administered by the Fish and Wildlife Service of the Department of the Interior. It is alleged that the Aransas National Wildlife Refuge is the winter home of the world's last surviving whooping cranes.

As has been stated, the individual Defendants are either the members or officers of the Texas Parks and Wildlife Commission, and the dredgers are those holding permits from the Commission to dredge for shell in the above mentioned bays. The dredgers all have permits issued by the Texas Parks and Wildlife Commission under Sections 4052 and 4053(1) and (2) of the Texas Revised Civil Statutes. Since the waters in which these activities are conducted are navigable, the dredgers must also secure permits from the Secretary of the Army upon the advice of the Corps of Engineers, as provided for in Title 33, Section 403 of the United States Code. While the Plaintiff makes an assertion that some of these dredgers have not obtained such permits, I find this allegation to be without merit, as all dredgers have answered showing that such permits have been obtained by them.

The Plaintiff, National Audubon Society, Inc., alleges that as a direct result of the dredging operations, silt and sedementary particles are set in motion and that this action is destroying the natural food for the famous whooping crane, an almost extinct variety of bird, and the roseate spoonbill and other varieties of wild birds known to inhabit these areas. It also alleges that the dredging is destroying the oyster beds and generally upsetting the ecosystem. This, in turn, they allege renders their sanctuary property useless and destroys the value of their leases, as well as that of the Aransas National Wildlife Refuge.

The Plaintiff alleges that the permits under which the dredgers have been

operating were issued in violation of Section 4053 of the Texas Revised Civil Statutes. This is the reason for their suit against the individual members and officers of the Texas Parks and Wildlife Commission, since it is claimed that they exceeded their statutory authority. The Plaintiff further alleges that the dredging operations of the Defendant dredgers constitutes both a public and private nuisance. It also alleges that the dredging activities of the Defendant dredgers and any permit issued by the individual Defendants will result in the extinction of the last surviving wild whooping cranes and such activities are therefore in contravention of the August 16, 1916, treaty (39 Stat. 1702) between the United States of America and Great Britain, which had as its object the preservation of migratory wildlife and that it also violates in some respects the Rare and Endangered Species Act of 1958, Title 16, Section 668 dd. The Plaintiff further alleges that the Defendant dredgers did not have a permit authorizing them to pollute the waters of the bays in question, and that such permits are required by the provision of the Texas Water Quality Act, Article 7621d–1, Texas Revised Civil Statutes.

The Defendants, in their different motions to dismiss, ask this Court not to take jurisdiction of this matter and advance many reasons therefor. The contentions of the Defendants, which singly and together are determinative of the motion to dismiss, will be discussed separately.

### I.

### THE QUESTION OF THE STATE BEING A NECESSARY PARTY

All Defendants assert that the State of Texas is a necessary party and that the Plaintiff cannot assert a claim against the State of Texas, because of its Eleventh Amendment right of immunity from suit.

There is no question that if the Plaintiff is to prevail, state action will of necessity be controlled and that the State of Texas will lose valuable property rights. Worcester County Trust Company v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268, has cautioned us against granting any injunction which would interfere with the activities of State officers discharging in good faith their supposed official duties, unless the granting of an injunction is in a case that is free from doubt.

The Plaintiff alleges that the members of the Texas Parks and Wildlife Commission and its officers have not acted in their official capacities, because their actions are unconstitutional. They make much of the fact that the Texas Parks and Wildlife Commission, by its Order of December 11, 1964, opened all the bays of Texas to dredging which had theretofore not been open for dredging, when it only had before it the application of Heldenfels Bros. to take and carry away shell and mudshell from a designated part of Copano Bay. The Plaintiff seems to believe that each application for a permit to dredge shall be taken up individually. A copy of the Order in question has been attached to the motion to dismiss filed by the Attorney General of Texas. The Order in question shows on its face that a notice of the hearing giving rise to the Order in question was duly and properly given as provided by the applicable laws of the State of Texas, and the rules and regulations of the Commission. It shows that the Commission considered the things that the Plaintiff in this cause is now complaining about. It also provides that each individual dredger would have to secure permits from the Commission upon the terms and conditions to be prescribed by its Executive Director, and the Texas Parks and Wildlife Commission reserved the right to rescind, modify and enlarge any permit given.

The records of this case show conclusively that the Texas Parks and Wildlife Commission is continually on the alert to prevent exactly what the Plaintiff is complaining about. They work in conjunction with Federal Agencies. The records in this case also show

that the Corps of Engineers, before granting any permit to the dredgers, also seeks the advice of the Department of Interior, as to the effect of such dredging on the ecosystem and its effect on marine life and wildlife. A reading of different Orders and correspondence between the several agencies shows that the restrictions placed on the permits issued by the Texas Parks and Wildlife Commission are even more stringent than the recommendations of Federal Agencies. I cannot, therefore, hold that the members of the Texas Parks and Wildlife Commission and its officers have so clearly acted beyond their official duties that I must enjoin their actions. Under this setting, the State of Texas is a necessary party. The attempt to sue the natural Defendants in their individual capacities must, therefore, fail and I must hold that the Plaintiff, National Audubon Society, Inc., is actually suing them for what they have done in their official capacities, and I will not interfere with their activities.

■ If, in fact, there has been some indiscretion in the issuance of the permits, then this is a proper matter for the State Courts to decide, even to reaching the point of the constitutionality of their acts. Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). City of Meridian v. Southern Bell Telephone and Telegraph Company, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959).

■ The State of Texas, through its Parks and Wildlife Commission, has entered into certain contracts with the dredgers to take and buy its shell. The most recent case in point is Sadler v. O. L. Akin, et al., Tex.Civ.App., 452 S. W.2d 938 (no writ history). This case and the many cited in it hold that where a contract's validity is in issue, the attacking of a State Officer's acts which would effect the contractual liability of the State, is in fact an action against the State. The Plaintiff's cause of action must, therefore, fail, as the State is a necessary party and it is immune from suit.

## II.

### PLAINTIFF'S STANDING TO SUE

■ The Defendants, in general, attack the Plaintiff's standing to sue. This allegation of the Defendants is of necessity interwound with what has heretofore been said. By the bringing of this suit, the National Audubon Society, Inc. is apparently setting itself up as the enforcer of the terms of the treaty between the United States and Great Britain of 1916, cited above, as well as the Rare and Endangered Species Act of 1958, also cited above. It also seeks to substitute itself to enforce the requirements of Section 403, Title 33, of the United States Code, which the Secretary of Defense, through the Corps of Engineers, is charged with the responsibility of enforcing. It also claims certain rights to enforce the Texas Water Quality Act, which, under its specific provisions, namely Article 7621d–1, Section 1.08, Texas Revised Civil Statutes, provides that the Parks and Wildlife Commission is the one charged with the responsibility of enforcing its provisions to the extent that any violation effects aquatic and wildlife.

■ The administrative remedies available to this Plaintiff are many and sundry. The National Audubon Society, Inc. has not shown that any complaint has ever been made to any Governmental Agency, State or Federal, to correct the wrongs that they complain about. The Agencies referred to are better equipped to look into the complaints of the Plaintiff than this Court, and are able to give the Plaintiff the same relief they seek here. They should be given an opportunity to examine the complaints of the Plaintiff, and the Plaintiff should exhaust these administrative remedies before seeking relief in this Court.

## III.

### THE NUISANCE ALLEGATION

The Plaintiff seeks to enjoin the dredgers from dredging any further, claiming that their dredging operations

constitute a nuisance, both public and private.

■ "In nuisance actions, courts have substantially narrowed the scope of protected interests by requiring plaintiff to show that the nuisance has caused or will cause injury peculiar to him. If the injury is to the general public and no individual sustains special injury, only governmental entities will have standing to sue the polluters." 48 Texas Law Review 1172. The injury which the Plaintiff is asserting to its leaseholds is not peculiar to it, but is shared by the public in general and all of those whose lands border on the bays in question. As stated in the same Texas Law Review Article cited above, since the Plaintiff in this cause has no standing to sue, "conservationists should seek a legislative enactment which would authorize any citizen of the state to bring suit against any polluter, private or public, to protect water resources". No such enactment can be found in the Texas law.

out expense. The Plaintiff stated by the affidavit of Charles H. Callison, the Executive Vice President of the National Audubon Society, that if the Plaintiff had to commercially negotiate the leases, the cost would be greatly in excess of the required amount. The Plaintiff does not, however, afix a numerical value to the benefit derived from the Society's maintaining the sanctuary, nor do they ever plainly state damages directly resulting from the dredging operations of the Defendants. The burden is on the Plaintiff to satisfy the Court that the requisite amount is present. McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135. Value is to be measured by that which the Plaintiff seeks to gain— the pecuniary consequences to them. Breault v. Feigenholtz, 7 Cir., 380 F.2d 90, 92. (See: Overby v. Gordon, 177 U.S. 214, 20 S.Ct. 603, 44 L.Ed. 741.) This Court cannot find that the Plaintiff has met its burden.

## IV.

### THE JURISDICTIONAL AMOUNT INVOLVED

■ It is undisputed that the Society is before the Court because they claim that the operations of the shell dredgers are destroying their property value in their sanctuary, and endangering the wildlife of the locality. Under Title 28, Section 1331, United States Code, the amount in controversy must exceed Ten Thousand ($10,000.00) Dollars. It is of some value to the Society for the property in question to be utilized as a sanctuary for the conservation of wildlife, including the furnishing of protected areas where they may survive unmolested in a natural environment. There is evidence that the cost of securing and maintaining the sanctuary is Ten ($10.00) Dollars a year for fifty years on the Second Chain property, or a total of Five Hundred ($500.00) Dollars, and the Matagorda Island property is with-

## V.

### CONCLUSION

Since the Court has concluded that the State of Texas is a necessary party, that the Plaintiff has no standing to sue, that it has not exhausted its administrative remedies, cannot show damage peculiar to it in order to abate a nuisance, and in its diversity action has not borne out its burden of showing that the amount in controversy is more than Ten Thousand ($10,000.00) Dollars, the Court has no choice but to grant the motions to dismiss as to all Defendants.

It is therefore ordered, adjudged and decreed that this cause be, and the same is hereby, dismissed.

This Memorandum constitutes the Findings of Fact and Conclusions of Law and is a Final Judgment in this cause.

The Clerk will send copies of this Memorandum and Order of Dismissal to all counsel for the parties.