Argued March 26, decided April 1, rehearing denied May 20, 1913.

# FIREBAUGH v. BENTLEY.*

(130 Pac. 1129.)

**Deeds—Mistake—Sufficiency of Evidence.**

1.   Evidence in an action to cancel a deed on the ground of mistake as to the land agreed to be sold *held* to show a mutual mistake as to the location of the land.

**Brokers—Representations of Agents—Responsibility of Principal.**

2.   The purchaser of land could rely upon the representations of the seller's agent as to the true location of the land, such representations being within the ordinary scope of the authority of real estate brokers.

   [As to an agent's act beyond the scope of his authority, see note in 6 Am. St. Rep. 37.]

**Cancellation of Instruments—Mistake—Relief.**

3.   Where the parties by a mutual mistake as to the location thought that the land sold was practically all level and suitable for orchards when a part of it was hilly and unfit for that purpose, they should be restored to their positions before the conveyance was made by the purchaser reconveying the land, and the seller paying the part of the price paid and canceling the note and mortgage given for the remainder.

From Hood River: WILLIAM L. BRADSHAW, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by L. D. Firebaugh against Leon M. Bentley and Jennie C. Bentley to set aside a deed on the ground of a mutual mistake.

On April 16, 1909, the defendants conveyed to the plaintiff the northwest quarter of the southeast quarter and the northeast quarter of the southwest quarter of section 16, township 2 north, range 11 east, Willamette meridian, containing 80 acres.  Contending that all parties to the conveyance were mutually mistaken as to the topographical situation of these legal subdivi-

---

*For the doctrine that a person dealing with the agent has the right to rely upon his assumption of authority, see note in 38 L. R. A. (N. S.) 1137.—REPORTER.

sions, the plaintiff brought this suit to set aside the deed on the ground of such mistake. He alleges, in substance, that he informed the real estate agent of the defendants that he wanted a tract of land suitable for an orchard, that he was taken upon the land by the agent, and as it was shown to him practically all of it lay south of a deep canyon, and was quite suitable for the purpose intended, when, in fact, as he discovered afterward, it was situated in about equal proportions on both sides of the canyon, and that a great part of it was steep and rocky, unfit for cultivation, and in no way suitable as a location for an orchard. The plaintiff alleges that he paid in cash to the defendants $1,150, and gave his note and mortgage on the land for $2,000, the remainder of the purchase price. It is alleged in the complaint and admitted by the answer that the plaintiff tendered a deed to the defendants for the property and demanded a repayment to him of the $1,150, with interest from April 17, 1909, a year's interest on the $2,000 note above described, and some taxes on the land, together with a cancellation of the note and mortgage.

The answer admits the conveyance from defendants to plaintiff, also that the defendants authorized a real estate firm, composed of J. H. Devlin and W. A. Firebaugh, a brother of the plaintiff, to sell the property for them as stated in the complaint. Otherwise the complaint is traversed. For new matter the defendants allege, in substance, that the plaintiff ought not to be permitted to maintain the suit or to make the allegations in his complaint which are traversed, because, as the answer avers, after defendants gave Devlin & Firebaugh authority to sell the land, the plaintiff induced the firm to act as his agents without the knowledge of defendants, and during the negotiations those agents were informed by the defendants

thát the latter would not warrant the location of the boundary lines of the land; that its precise limits were unknown to defendants; that they had never had the lands surveyed, and, further, that, if the plaintiff purchased the land he must do so assuming the risk of the location of the boundaries. They say also that they had no knowledge or information sufficient to form a belief as to whether or not the agents did so inform plaintiff, but say that it was their legal duty to do so, and the plaintiff is bound by the agents' knowledge.

This new matter was traversed, in turn, by the reply. The court below upon the testimony reported by a referee made findings of fact and conclusions of law in favor of the defendants, and dismissed the bill. From this decree the plaintiff has appealed.

REVERSED.

For appellant there was a brief and an oral argument by *Mr. B. E. Youmans.*

For respondents there was a brief and an oral argument by *Mr. George R. Wilbur.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In addition to the facts above stated, it appears in testimony that the real estate firm of Devlin & Firebaugh maintained an office in Hood River, about six miles from the land in question. Attached to this office as an employee was one Frank Chandler, a cousin of the defendant L. M. Bentley. To this cousin as such employee of the firm of real estate agents the defendant L. M. Bentley intrusted the lands in question for sale. Chandler filled out a blank furnished by the firm describing the land as 80 acres composed of 75 acres level and five acres rolling, and giving other

data usual in cases such as this, which description the defendant L. M. Bentley signed. Chandler himself owned real property near the land in question, was supposed to be familiar with the location of the latter, and took J. L. Firebaugh, another employee of the real estate firm, into the country, and showed him as the tract offered for sale a body of land bordering on the south bank of the canyon in question. The land pointed out was comparatively level and well suited for orchard purposes, if cleared and reduced to cultivation. With this information, the firm advertised the land for sale, stating that the entire tract could be cleared, plowed and planted to a standard variety of trees at a total cost not to exceed $75 per acre. This advertisement was brought to the notice of plaintiff. Besides this, J. L. Firebaugh, to whom Chandler had shown the land, took the plaintiff and showed him the same tract that Chandler had shown him. The original commission given by Bentley to the firm allowed them to make as their compensation all above $40 per acre. After plaintiff had seen the land as stated, the firm told Bentley they had an offer of $3,000 net to him for the tract of 80 acres, one third in cash and the remainder of $2,000 as a deferred payment. As a matter of fact they charged the plaintiff $3,150 for the land, of which they retained $150 as commission, paying Bentley $1,000 in cash, and plaintiff gave his note and mortgage to Bentley for $2,000. About 14 months after the sale had been consummated, the plaintiff had the land surveyed, and discovered then for the first time that the canyon in question ran approximately through the center of the tract from northwest to southeast, and that in reality only about half the land was available for orchard purposes, the remainder being situated in the ravine which was deep and inaccessible and on a rocky hillside not fit for cultivation.

From all the testimony the plaintiff was clearly mistaken about the location of the land which he purchased. In short, he bought 80 acres of what he supposed and was led to believe was comparatively level land suitable for orchard purposes, when, in fact, he only acquired about 36 acres of such land, the remainder being totally unfit for that or any other purpose except possibly grazing.

It remains to be seen whether the defendant was also mistaken. As reported by his cousin to the firm of real estate agents by whom the latter was employed, he represented the land to be 75 acres level and five acres rolling. In his testimony, when asked to describe the land generally in reference to the situation and character, he said: "It looked out on the Mosier valley. To the west there is a hill. I would call it table-land. To the north there is another. At the south there is another hill on the south side. The north side and to the east it is canyon. This particular piece of land slopes to the east, is rolling and generally timbered and brush land." In addition to this, some time prior to the commencement of this suit, the plaintiff interviewed Bentley about the situation of the tract, and the latter drew a rough plat indicating the lay of the land showing the canyon on the north side substantially as Chandler had pointed it out to Firebaugh, and as the latter had shown it to his brother, the plaintiff. This plat was admitted in evidence, and its making was avowed by the defendant Bentley. He did not pretend to give the precise location of the lines of the government survey, but he did understand and so state to the plaintiff that the land lay south of the canyon, and that substantially all of it was comparatively level.

1. As against the actual survey it is giving Bentley the credit of being an honest man when we say that he was mistaken as to the true situation of the land. He

shows this by his testimony and his representations to his cousin and to the plaintiff. Although Chandler was on the stand as a witness for the defendants, he did not pretend to question in any way the fact that he had taken the plaintiff's brother on the land and described it to him substantially as it was afterward represented to the plaintiff. The testimony clearly establishes a mutual mistake of the parties as to the true location of the land. There is nothing in the testimony showing that the firm or its employees ever acted in any way disloyal to the interests of the defendants. Nothing out of the ordinary course of business of a real estate broker finding a purchaser for his client's land and reporting the offer to the seller is disclosed by the record. As to informing the agents that the plaintiff must purchase the land at his own risk about the location of boundaries, the defendant Bentley says this: ''He [referring to one of the agents] asked me if I had a survey of the tract, if I knew where the lines were. I told him I did not know only indefinitely; that I had never had the place surveyed; that I had sent to Portland through J. L. Henderson to get the government field-notes and attempted to find the government corners, but I had also tried to satisfy myself approximately where we were then working on the land, so I could know whether I was clearing my own land or someone else's but I could give him no satisfaction in regard to the boundary lines, but if he or his customer required a survey that they would have to add the cost of a survey to their price.'' There is nothing in the testimony tending to show that this statement was communicated to the plaintiff, and even if it had been made known to him, there is nothing in it at variance with the representations made by Chandler through Firebaugh to the plaintiff. On the other hand, its tendency is to lull the plaintiff into the

belief that the defendant knew where the lines were approximately, and was warranted in representing that the land was substantially all level.

2. The plaintiff had a right to rely upon the representations of the agents of the defendants as to the true location of the land, for such statements were within the ordinary scope of the authority of real estate brokers. That these were authorized by the defendant Bentley is shown by the description filled out by his cousin, by the plat which he drew for the plaintiff, and by his own testimony in describing the land. At the argument counsel for the defendants criticised the accuracy of the survey which plaintiff claims disclosed the mistake upon which he relies. In our judgment, however, it is *prima facie* correct or at least sufficiently accurate to require of defendants a better survey if they are dissatisfied. It is hardly probable that an experienced surveyor such as the one who made the survey, having established the government corner of a section, would so far miss the lines of the subdivisions involved as to change the canyon from the north boundary to the middle of the tract.

3. The case is much like that of *Copeland* v. *Tweedle,* 61 Or. 303 (122 Pac. 302), in which we sustained the Circuit Court in setting aside a conveyance of land on the ground of misrepresentation of the quantity of timber then standing on the same. True enough, that case was grounded on the fraud of the seller's agent, although the seller herself was innocent. But by as much as accidental shot will kill as certainly as one designedly aimed, by so much, when one contracting party is led into a losing position by a mutual mistake of himself and the other party, is the result as harmful as if he was wronged by the active fraud of the person with whom he deals. We are of the opinion that the parties ought to be restored to their former *status* as

the same existed before the conveyance from the. defendants to the plaintiff. This would include a reconveyance from the plaintiff and his wife, if he has one, to the defendant L. M. Bentley or his wife, or to both of them, according to what the state of the title was in the beginning of the transactions narrated in the pleadings, as well as the repayment of the $1,150 cash portion of the purchase price and the return and cancellation of the $2,000 note and mortgage. It does not appear whether the defendants or either of them are the holders of the note and mortgage so as to be able to surrender the same. The only alternative in default of their surrender would be a decree for plaintiff against defendants for the amount thereof in addition to a personal decree for $1,150 or so much thereof as should remain unpaid. Considering the possibility that plaintiff could collect such a decree for the amount of the note and leave the land holden by virtue of the mortgage for the payment of the sum secured thereby to an innocent purchaser of the yet unmatured note, it is quite important to the defendants that they have reasonable opportunity to surrender those securities.

The decree will therefore be reversed, with leave to the parties to apply to the Circuit Court by supplemental pleadings or otherwise, for such decree as will carry into effect the doctrine of this opinion.

REVERSED.