CHARLES W. WAGNER, Appellee, v. E. A. GLICK et al.,
Appellees, and F. A. RIFE, Appellant.

**VENUE:  Nature of Action—Real Property—Reformation of Lease.**
1   The determination of an interest in real estate is directly involved
in an action (a) to so reform a lease that it may state that it
merges a former lease, and (b) to restrain the landlord from
maintaining a threatened ouster action based on the theory that
both leases are in force, and that the nonpayment of rent under
both leases has deprived the tenant of all rights in the premises.
It follows that such an action must be brought in the county where
the land is situated.   (Sec. 3491, Code, 1897.)

**REFORMATION OF INSTRUMENTS:  Grounds—Mistake—Degree**
2   **of Proof—Defectively Prepared Lease.**  Mutual mistake (proven
by clear and satisfactory evidence) frustrating mutual intention,
establishes right to reformation.  So held where the execution of a
lease of an entire tract was intended to merge a prior lease cover-
ing only a part of the tract, but by mutual mistake such intention
was omitted.

**LANDLORD AND TENANT:  Leases—Merger.**  Whether a lease of
3   an entire tract merges, *as a matter of law*, a prior lease of a part
only of the tract, *quaere*.

**PLEADING:  Demurrer—Erroneous Ruling—Answering Over—Effect.**
4   Error in overruling a demurrer is waived by answering over.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

FRIDAY, SEPTEMBER 29, 1916.

THIS is an action in equity for the reformation of a lease
to real estate, and it is asked that the first of two leases be
canceled and decreed to be merged in the second lease.   The
case was dismissed as to defendants Kirchner and Glick, who,
it appeared at the time of the trial, had no interest in the case.
The trial court found for the plaintiff, and the defendant
F. A. Rife appeals.—*Affirmed.*

*T. A. Kingland,* for appellant.

*Stipp, Perry & Starzinger,* for appellee.

PRESTON, J.—The issues presented by the pleadings are substantially these:

"The plaintiff claims that he was the assignee of a lease for a right of way across a 50-acre parcel of ground in Polk County, with the right to take sand from a sand bar in the Raccoon River; that this land was afterwards purchased by Glick & Rife, a copartnership; that afterwards, for an additional consideration, a new lease for the whole of the land was entered into between plaintiff and Glick & Rife, the same being executed by Glick, as the agent of, and for, Glick & Rife; that the agreement was that the new lease should supersede and cancel the old one; that afterwards Rife acquired all the interest of Glick in the land; that, by mutual mistake and through the oversight of the scrivener who prepared the second lease, there was an omission to state therein that the first lease was thereby canceled; that, because of the failure of the second lease to recite that former was canceled, due to mistake and oversight, Glick demands payment under both leases, and threatens to and will, unless prevented by order of the court, commence an action at law to oust and remove plaintiff from the premises because of the failure of the latter to pay rent under the old canceled lease. The petition alleges that defendant Kirchner claims some interest in the premises, but that his interest, if any, is junior and inferior to the rights of plaintiff under the second lease. The petition prays for a reformation of the second lease so that the same may unequivocally express the true agreement of the parties, viz., that the first lease was canceled and at an end, and for general equitable relief."

Defendant Kirchner filed a disclaimer of interest. Defendant Rife filed an application for a change of place of trial to Winnebago County, that being the county of his residence.

Rife, in his answer, claimed that, at the time of the execution of the second lease, he and Glick were tenants in common of the 50-acre tract of land in controversy; that the second lease was executed by Glick without the knowledge or consent of Rife, and was hence not binding upon him; that he had repudiated said second lease; that plaintiff has refused to pay rent under the first lease, and that hence Rife was entitled to the immediate possession of the premises; that Glick and Kirchner had neither of them any interest in the premises; that defendant was a resident of Winnebago County; that he had previously moved to transfer the cause to the county of his residence; and that, since the making of said motion, the court was without jurisdiction to try the case. Defendant prayed for an order removing the cause for trial to the county of his residence, failing which, that plaintiff's petition be dismissed, and for general equitable relief.

The plaintiff filed a reply, stating that, if Rife did not authorize the making of the second lease by Glick, he very soon thereafter learned thereof, and by his acts and conduct adopted the lease and ratified the act of Glick in executing the same.

The decree reformed the second lease so as to make the same recite that the first lease was canceled and at an end; gave judgment against plaintiff in favor of defendant for the rent then due under the second lease. It appears that the 50-acre parcel of land in controversy lies in the western portion of the city of Des Moines, and is bounded by the north bank of the Raccoon River. It is first bottom land and overflows. It is intersected by two railroad tracks and is valuable chiefly from the fact that large deposits of sand in the Raccoon River can be reached from the land.

March 2, 1911, Waldo & Waldo, who then owned the land, leased a 50-foot wagon right of way across the same to a sand bar in the river, to one George Grier, granting him also the privilege of using a bridge on the land across Walnut Creek,

the use of an old house on the premises, and the privilege of piling sand along the tracks of the Milwaukee Railroad, but no further right was granted. December 12, 1912, Grier assigned this lease to James G. Berryhill, Jr., and Charles Wagner, plaintiff herein; and Wagner subsequently acquired the interest therein of Mr. Berryhill. Under this lease, plaintiff Wagner proceeded to haul sand from the sand bar in the river over and across the right of way demised. Afterwards, Waldo & Waldo traded this land to, and for a stock of goods owned by, Glick & Rife, a copartnership doing business at Lone Tree, Iowa; but, Glick & Rife being in financial straits, the title, for convenience, was taken in the name of the Lone Tree Savings Bank, as trustee, for Glick & Rife. During this time, Glick purported to represent the partnership, and collected rent under the Waldo & Waldo lease from the plaintiff. He importuned the plaintiff to take a lease upon the entire parcel of ground. On or about May 26, 1913, Glick came to Des Moines, stating that he represented the partnership of Glick & Rife, and negotiated with Wagner a new lease covering the whole ground.

All of the rights granted in the Waldo & Waldo lease were included in the new lease, and plaintiff claims there was a mutual understanding between Wagner, lessee, and Glick, representing Glick & Rife, that the new lease should cancel and terminate the old lease. The new lease was executed and acknowledged by Glick upon behalf of the partnership. The rent payable under the old Waldo & Waldo lease was $200 per year, while the rent reserved under the new lease was $300 a year. The land, as before stated, was first bottom; it overflowed, was almost inaccessible and only a small portion thereof was susceptible of cultivation.

Upon the execution of the new lease, Wagner paid the first year's rent of $300 by a check for $200, and by note of $100, payable to the order of Glick & Rife, which note was afterwards assigned for collection to the Lone Tree Savings Bank,

agent and trustee for Glick & Rife, to whom Wagner made payment of the note. The proceeds of the first year's rent were fully accounted for by Glick to Mr. Rife, sometime between June and September, 1913.

On or about November 25, 1913, defendants Rife and Kirchner came to Des Moines to see if they could not get Mr. Wagner to relinquish the option contained in the new lease for an extension or renewal thereof, it appearing that Rife had a chance to sell the land, provided the option on the part of Mr. Wagner to renew the lease could be done away with. At that time, Mr. Rife said that Glick had no right to execute the lease for the firm. He declared, however, that he desired to see if he could not make arrangements with Wagner for a waiver by the latter of the right to renew the lease. It was finally agreed that, if Rife would pay Wagner $300 on or before December 31, 1913, Wagner would waive his right to a renewal of the lease, and a written contract was entered into to that effect, signed by both Wagner and Rife. Rife did not sell the land, nor did he exercise his right under the contract last referred to. On August 9, 1913, however, he had acquired Glick's interest in the land and had taken from Glick an assignment of Glick's interest in the new lease.

It seems that, at about the time of the execution of the contract of November 25, 1913, waiving the right to renew, Rife made an arrangement with Kirchner that Kirchner should collect the rent on the land in question from Wagner and apply the same on indebtedness owing by Rife to Kirchner. During the spring of 1914, Kirchner wrote to Wagner asking for the payment of the rent, and demanded payment of $500. Wagner responded that the rent reserved in the new lease was only $300, to which Kirchner replied that he was also wishing to collect the rent under the old lease. Wagner refused to pay the rent under the old lease, which he claims was canceled when the new lease was entered into, but offered to pay the rent reserved under the new lease, which was

refused. Further correspondence between counsel for Mr. Rife and Mr. Wagner ensued, resulting in the service upon Wagner of a notice to quit, that being preliminary to the proposed action on the part of Mr. Rife to oust Wagner from the premises because of his refusal to pay rent under the old lease, as well as under the new lease. Thereupon, plaintiff made a tender to the defendant of the amount due under the new lease, which was refused. Wagner has always been ready, willing and able to pay the rent under the new lease. To save himself from being ousted by an action at law, and to secure a more speedy adjudication of the controversy between the parties, this suit was accordingly brought by the plaintiff for the reformation of the lease, so as to make the same state that the old Waldo & Waldo lease was canceled.

It should be said also that defendant claims that plaintiff paid rent under the old lease for the year following the making of the new lease. The rent paid on March 2, 1913, on the old lease, was rent in advance, and paid up to March, 1914. This payment was before the execution of the new lease, which was in November, 1913. Plaintiff paid the first year's rent under the new lease in advance. There is evidence that, when the new lease was drawn, plaintiff did not object to continuing paying the rent he had paid for the current year, so that plaintiff did pay the $200 under the old lease before the execution of the new, and payment under the new lease would cover at least a part of the time for which he had already paid rent under the old lease. Plaintiff and his witnesses testify that it was talked and agreed that the old lease should be canceled upon the execution of the new. Defendant Rife testified that it was the understanding, when the new lease was drawn, that the rent for the future should be under both leases, $500. Plaintiff, Wagner, made tender of the rent under the new lease, July 1, 1914. Defendant Rife served notice to quit on June 26, 1914.

1. As to the ruling on the application of defendant Rife for a change of place of trial, the appellee contends that the

ruling is not appealable. Appellant concedes that an appeal would not lie from the order overruling the motion for change of place of trial, but claims that the ruling is, nevertheless, subject to review on appeal from final judgment in the case, and in support of this proposition cites *Kell v. Lund,* 99 Iowa 153; *Wixom v. Hoar,* 158 Iowa 426; *Bennett v. Carey,* 57 Iowa 221; *Jones v. Chicago & N. W. R. Co.,* 36 Iowa 68; *Ferguson v. Davis County,* 51 Iowa 220; *Allerton v. Eldridge,* 56 Iowa 709.

1. VENUE: nature of action: real property: reformation of lease.

On the merits of the ruling, appellant contends that the action is brought for the reformation of a contract, and for an injunction, and contends that it is not brought for the determination of a right or interest in land or for the recovery of real property; that the action is based upon a contract, and that such actions are considered transitory, although they concern land. In support of these propositions, they cite 40 Cyc. 58, 62; *State v. Goodrich* (Mo.), 142 S. W. 300; *MacGregor v. MacGregor,* 9 Iowa 65, 78, 79; 34 Cyc. 964; *Bethell v. Bethell,* 92 Ind. 318. On the other hand, appellee contends that the suit is for the determination of a right or interest in real property, and, the real property being situate in Polk County, the suit was properly brought there. Code Section 3491. *Booth v. Bradford,* 114 Iowa 562; *Epperly v. Ferguson,* 118 Iowa 47; *Donaldson v. Smith,* 122 Iowa 388; *Bradford v. Smith,* 123 Iowa 41; *Long v. Garey Invest. Co.,* 135 Iowa 398; *Southern Pac. R. Co. v. Pixley,* 103 Cal. 118 (37 Pac. 194) ; 40 Cyc. 57.

The *MacGregor* case involved a question as to whether the courts can sustain the jurisdiction of naked questions of titles to land beyond the limits of the state, and it was held that the jurisdiction of a court of equity is sustainable wherever the person of defendant may be found, in cases of trusts, of fraud and of contract, even though the lands may be affected by the decree. See, also, *Sullivan v. Kenney,* 148 Iowa 361, 387.

In appellant's citation from 40 Cyc. 58, at 59, the rule is stated thus:

"The action must be brought where the land lies if these two things concur: (1) If the subject of inquiry is a right or interest in the land; and (2) if the judgment in the case will operate directly upon this right or interest. But the action, under this doctrine, is not within the rule, although its subject of inquiry is such right or interest, if the judgment operates merely *in personam*. The result is to distinguish actions 'for the determination' of an interest in land from actions which involve the determination of such an interest, but will take effect in an injunction commanding defendant to do an act which can be done by him within the jurisdiction of the court, or in a judgment for pecuniary damages for breach of a contract."

We think the action is for the determination of a right or interest in real property. The defendant claims that these leases are both terminated and forfeited for failure on plaintiff's part to pay the rent. This is on the theory that both leases are in force. If the agreement was that the first lease was canceled by the execution of the second, or if the first is merged in the second, there could be no forfeiture, as claimed by defendant. If the second lease is reformed as asked, plaintiff would still retain possession of the property. If the lease is not reformed, then, under defendant's contention that there has been a forfeiture for nonpayment of rent, it might result in plaintiff's being ousted from the possession, and in that case, his entire interest in the real estate would terminate. So that upon the result of this suit depends the question as to the determination of plaintiff's entire interest in the real estate under the leases. It directly determines the interest in the land. 40 Cyc. 57.

Defendant contends that plaintiff is not entitled to an injunction to prevent the commencement of an action to recover possession of the land from plaintiff. Without referring to that question just now, it is clear that plaintiff would

not be entitled to such injunction unless he shows that he is entitled to a reformation of the lease. The real estate in question is situate in Polk County. The suit at bar affects this real estate. The purpose of this suit is to determine the right, interest and estate of the plaintiff. The plaintiff claims that he is the owner of a leasehold estate in all of the land of defendant under the new lease for a term of years. The defendant claims: First, that he is not bound by this lease, for that the same was not executed by him, but by one Glick who acted without his knowledge or consent; second, if it should be held that his acts and conduct amounted to an adoption of the lease and a ratification of the act of Glick in executing the same, then that a prior lease has always been and is now in force between the parties, and that the rights of the parties are to be determined by a consideration of both leases. The plaintiff claims that the old lease was terminated by, and merged in, the new lease, and has refused to pay rent except under the latter lease. Because of plaintiff's failure and refusal to pay rent under the old, as well as the new, lease, defendant lessor undertook to evict plaintiff lessee from the premises, serving upon him a notice to quit. Whereupon, the plaintiff lessee brought the present suit for the reformation of the new lease, so as to speak unequivocally the true understanding of the parties and the determination of the right, interest and estate of the plaintiff in the premises in question. As stated, the defendant Rife is a resident of Winnebago County, Iowa.

Section 3491, Code, 1897, reads:

"Actions for the recovery of real property, or of an estate therein, or for the determination of such right or interest, or for the partition of real property, must be brought in the county in which the subject of the action or some part thereof is situated."

Appellant contends that the other cases cited by appellee are not in point, because they involved the determination of some right or interest in real estate directly. What we have

said indicates that such is the case here, and that the suit is not to determine matters merely collateral. We think the court did not err in overruling defendant's application for change of place of trial.

2. It is next contended by appellant that the evidence did not warrant the court in reforming the new lease. This is really the more important point in the case, and is a fact question. Some of the facts have been already

2. REFORMATION OF INSTRUMENTS: grounds: mistake: degree of proof: defectively prepared lease.

noticed. Without setting out the evidence at any length, it is our conclusion, after reading the entire record, that plaintiff has made out his case by that clear and convincing evidence required in such cases. The testimony of plaintiff and another witness is direct and positive that it was the talk and agreement that the new lease should supersede the old one; that the rental was to be $100 additional to that mentioned in the old lease, and that the new lease was to cover the entire property and the old one be canceled. In addition to this, some of the circumstances strengthen this view. The first lease demised only a right of way, the right to take sand from the river, and the use of an old house on the land of the lessor. The new lease demised all of the land, together with all the buildings and improvements, and included all that had been demised in the first lease. This is at least a

3. LANDLORD AND TENANT: leases: merger.

circumstance corroborating plaintiff's claim, if, indeed, as a matter of law, the old lease was not merged in the new one, as claimed by plaintiff. The writing as drawn does not express the real intention of the parties. Under such circumstances, a reformation may be had. *Day v. Dyer*, 171 Iowa 437, 450. There are other circumstances favoring plaintiff's claim, and there are some circumstances tending to sustain the defendant's contention. The plaintiff seems to have paid rent under both leases in 1913. This is a circumstance against him, and, had he paid the $200 rental and the $300 rental at the same time, we would consider the circumstance a strong one. The force of this is

weakened somewhat by the fact that the $200 rent under the first lease was paid before the second lease was executed, and even before negotiations in regard to the second lease were begun. Under the first lease, the rent was payable in advance on March 2d of each year. About March 2, 1913, plaintiff paid this $200. After this, negotiations were begun looking to the formation of a new lease that, as plaintiff claims, should embrace all the land in controversy. The parties finally reached an agreement about May 26, 1913, under the terms of which $300 was to be paid down upon the execution of the agreement, and, on the 29th day of March of each year following, plaintiff was to pay $150 in money and give his note for $150 due in six months. Plaintiff was not allowed any credit under the new lease for the unearned portion of the rent paid in advance under the old lease. Plaintiff contends that this shows merely that Glick drove what at the time appeared to be a good bargain. But we think no more can be claimed for this than that plaintiff paid $300 on May 26th, and was not allowed any rebate by reason of the fact that the new lease was dated and related back to March 29th. Taking the entire record together, it is our conclusion that the evidence is sufficient to sustain the trial court's finding as to the reformation.

3. The defendant has assigned as error and argued the proposition that the trial court erred in overruling defendant's demurrer to the petition. The petition was not otherwise attacked. It seems to be the rule that this matter is waived by filing an answer. Code, Sections 3564 and 3565; *Frum v. Keeney,* 109 Iowa 393; *Sullivan v. Kenney,* 148 Iowa 361, 370. Some other questions are argued, but those already noticed are decisive of the case. We are of opinion that the trial court rightly decided the case, and the judgment is therefore—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.

4. PLEADING: demurrer: erroneous ruling: answering over: effect.