96 P.2d 710

STATE ex rel. TRUITT v. DISTRICT COURT OF NINTH JUDICIAL DIST., CURRY COUNTY, et al.
No. 4489.

Supreme Court of New Mexico.
Nov. 21, 1939.

Don G. McCormick, of Hobbs, and Richard E. Manson, of Santa Fe; for petitioner.

James A. Hall, of Clovis, for respondent.

### BRICE, Justice.

This original action was instituted by the filing of a petition in this court, in which it is in substance charged that the district court of Curry County will, unless prevented from so doing by a writ of prohibition issued by order of this court, try upon its merits a certain civil action therein pending, entitled "C. R. Anthony, Inc., a corporation, plaintiff, v. A. H. Truitt, defendant," and numbered 6024 on the docket of that court; though without jurisdiction of the person of the relator (defendant therein), in that personal service of a summons has not been made in New Mexico upon the relator, who is a resident of another state.

The respondent demurred to the petition upon several grounds, the principal one being that the suit is a proceeding in rem, or quasi in rem, and the district court of Curry County has jurisdiction of the res, and it is immaterial that it has not jurisdiction of the person of the relator.

The defendant was served with process by publication and by the delivery of a copy of the petition and notice of suit, as provided by Secs. 105-308, 105-310 and 105-312, Sts.1929, the parts of which, material to a decision of this proceeding, are as follows: "When any plaintiff, his agent or attorney in any civil suit pending or hereafter commenced in any court of record,

shall file a sworn pleading or affidavit showing that any defendant resides or has gone out of the state, * * * it shall be the duty of the clerk of said court to publish a notice of the pendency of the said cause in some newspaper published in the said county where the cause may be pending; said notice shall contain the names of the plaintiff and defendant to the cause, * * * also the name of the court in which said cause is pending, and a statement of the general objects of the action, shall show the name of plaintiff's attorney, with his office or post office address, and shall notify the defendant or defendants that unless they enter their appearance in said cause on or before the day named in said notice judgment will be rendered in said cause against them by default. Said notice shall be signed by said clerk. The publication of said notice shall be proved by the affidavit of the publisher, manager or agent of said newspaper, and the same shall be taken and considered as sufficient notice of summons and valid in law, and the plaintiff thereupon may prosecute his said cause to a final judgment under the same."

Sec. 105-308.

"When the residence of the defendant in the cases mentioned in the preceding section is known to the affiant, the same shall be stated in the affidavit, and if such residence is not known, that fact shall be stated. When the residence of the defendant is known, the plaintiff, his agent or attorney shall forthwith deposit a copy of the summons and complaint in the post office, postage prepaid, directed to the defendant at his place of residence." Sec. 105-310.

"Personal service of a copy of the summons and complaint out of the state shall be equivalent to publication and deposit in the post office as provided for by sections 4095 (105-308) and 4096 (105-310), New Mexico Statutes, Annotated (Codification) of 1915, and acts amendatory thereof. The defendant so served shall be required to appear on or before thirty days from the date of service. Return of such service shall be made by affidavit of the person making same." Sec. 105-312.

No specific provision is made in the above Statutes for constructive service of process in any particular class of actions, but the statutes are general, and on their face applicable to all cases in which personal service cannot be obtained. Such service is not due process of law in strictly personal actions (Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565); but it applies to all actions in which personal service is not an essential to due process of law, where suits may be instituted under recognized principles of law.

The Supreme Court of the United States, in construing a similar statute of the State of Texas, said: "It is true there is no statute of Texas specially authorizing a suit against a nonresident to enforce an equitable lien for purchase money, but article 1230 of the Code of Texas, hereinafter cited, contains a general provision

for the institution of suits against absent and nonresident defendants, and lays down a method of procedure applicable to all such cases. Obviously this article has no application to suits in personam * * *. The article must then be restricted to actions in rem; but to what class of actions, since none is mentioned specially in the article? We are bound to give it some effect. We cannot treat it as wholly nugatory, and as it is impossible to say that it contemplates a procedure in one class of cases and not in another, we think the only reasonable construction is to hold that it applies to all cases where, under recognized principles of law, suits may be instituted against nonresident defendants." Roller v. Holly et al., 176 U.S. 398, 20 S.Ct. 410, 412, 44 L.Ed. 520.

The essential facts alleged in the petition are as follows: The relator had leased certain real estate in Clovis, Curry County, New Mexico, on which is situated a building suitable for use as a department store. (Each reference to plaintiff means plaintiff below.) Relator proposed to transfer his lease to plaintiff for a bonus of $500, which offer plaintiff accepted. The relator stated he did not have in his possession a copy of the lease, but would sublease the property to plaintiff upon the same terms as those upon which he (relator) held the property.

The lease from the owner of the property to relator provided for the payment of a rental of $200 per month for the first five years and $250 per month for the second five years, and

"The party of the second part agrees to install at his own expense before September 1, 1938, a new modern store front complete, said store front shall become a part of the building and shall become the property of the party of the first part at the termination of this lease. * * *

"At the expiration of the term of this lease, the party of the second part shall have an option to extend this lease for an additional period of five years at a rental equal to the best bona fide offer of rental received at such time for such period by the party of the first part, it being the intention that the party of the second part shall have the right of refusal of a lease for such additional period of five years.

"This lease may at the option of the party of the second part be assigned by him or the premises may be sublet by him provided however that no sub-lease shall be made unless the same covers the entire premises."

Relator falsely represented to plaintiff that his lease from the owner provided for the payment of $300 per month rental for the first five years and $350 per month for the second five years; and did not advise him that a provision was made in the lease for a further term after the expiration of ten years.

The sub-lease which relator prepared and which plaintiff accepted, provided for the

payment of $300 per month for the first five years and $350 per month for the second five years, and made no provision for a longer term, following relator's false representations regarding the terms of his lease.

It is charged that through the false representations and fraud of relator, the plaintiff was induced to accept the sub-lease as prepared by relator. Before the plaintiff knew of the fraud practiced upon it by relator, it had spent a large sum of money in building a new front to the building, as required by the terms of the original and sub-lease, and had installed a department store in the building at an investment of $50,000.

Upon these facts, plaintiff, by its action in the Curry County district court, asks that "the sub-lease contract be reformed and made to speak the truth in that same be made to provide that plaintiff pay for the first five years only the sum of $200.00 per month, and for the second five years only the sum of $250.00 per month, and that the right of renewing said lease, as is provided for in the paragraph numbered ten (10) of the original lease, be assigned and transferred to plaintiff; and, further, that proper adjustment be made in the decree as to credit to plaintiff for any and all excess payment made, or that may be made prior to entry of final judgment herein * * *"

The questions are, has the district court jurisdiction:

(1) To reform the lease by decreasing each monthly payment one hundred dollars?

(2) To allow plaintiff credit on future rentals for excess payments?

(3) To enforce the execution and delivery of an assignment of the right to renew the lease after ten years?

The general rule stated in innumerable decisions is that jurisdiction is the power to hear and decide; and, broadly speaking, it may be exercised either in rem or in personam. While constructive service of process clothes the court with jurisdiction to try actions in rem, there must be personal service of process before a court has jurisdiction to enter a decree in an action strictly personal. In certain classes of actions which are personal in form, usually designated as quasi in rem, the court may obtain jurisdiction by constructive service of process and through its action upon property of the defendant situated within the state, but no valid personal judgment can be entered against the defendant. The following, from decisions of the Supreme Court of the United States, are illustrative of the general rule:

"Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. * * * Such service may also be sufficient in cases where the object of the action is to reach

and dispose of property in the State, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings in rem. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely in personam, constructive service in this form upon a non-resident is ineffectual for any purpose. * * *

"It is true that, in a strict sense, a proceeding in rem is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants; but, in a larger and more general sense, the terms are applied to actions between parties, where the direct object is to reach and dispose of property owned by them, or of some interest therein. Such are cases commenced by attachment against the property of debtors, or instituted to partition real estate, foreclose a mortgage, or enforce a lien. So far as they affect property in the State, they are substantially proceedings in rem in the broader sense which we have mentioned." Pennoyer v. Neff, 95 U.S. 714, 727, 24 L.Ed. 565.

"The question is not what a court of equity by virtue of its general powers, and in the absence of a statute, might do, but it is, what jurisdiction has a state over titles to real estate within its limits, and what jurisdiction may it give by statute to its own courts to determine the validity and extent of the claims of non-residents to such real estate? * * * It has control over property within its limits; and the condition of ownership of real estate therein, whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligations, private or public, and the modes of establishing titles thereto. It cannot bring the person of a non-resident within its limits,—its process goes not out beyond its borders,—but it may determine the extent of his title to real estate within its limits; and, for the purpose of such determination, may provide any reasonable methods of imparting notice. The well-being of every community requires that the title to real estate therein shall be secure, and that there be convenient and certain methods of determining any unsettled questions respecting it." Arndt v. Griggs, 134 U.S. 316, 10 S.Ct. 557, 558, 33 L.Ed. 918.

"Jurisdiction is the right to hear and decide, and it must be exercised, speaking in a broad sense, in one of two modes—either in rem or in personam. * * *

"An essential characteristic, however, of a proceeding in rem is that there must be a res or subject-matter upon which the court is to exercise its jurisdiction. In cases purely in rem, as in admiralty and revenue cases for the condemnation or forfeiture of specific property, a preliminary seizure of the property is necessary to the

power of the court to adjudicate at all. In other cases, where the proceedings are in form in personam, but the court is unable to acquire jurisdiction of the person of the defendant, by actual or constructive service of process, the action may proceed, as one in rem against the property of which a preliminary seizure or its equivalent has been made; or, jurisdiction may be exercised without such preliminary seizure, where the relief sought is an adjudication respecting the title to or validity of alleged liens upon real estate situate within the jurisdiction of the court. Roller v. Holly, 176 U.S. 398, 20 S.Ct. 410, 44 L.Ed. 520. To the class of cases where the proceedings are in form in rem may be added those connected with the grant of letters either testamentary or of administration." Overby v. Gordon, 177 U.S. 214, 20 S.Ct. 603, 606, 44 L.Ed. 741.

█ There is no difficulty regarding actions strictly in rem and primarily against property, such as seizures of ships in admiralty proceedings, actions for the enforcement of the payment of taxes, and all actions against property, in which ownership is not a question; nor those regarding the status of property and persons; nor actions quasi in rem in which property is attached or otherwise seized and disposed of by the court, and the proceeds applied to debts secured by mortgage, attachment or other lien. The authorities are in agreement that, with authorized substituted service of process, courts have jurisdiction to enter decrees and judgments which affect the property only, in all such cases.

█ But actions affecting title to property within the jurisdiction of the court, but which is not seized or otherwise brought under the direct control of the court for disposition, and involved only incidentally by the effect on its title of the decree or judgment entered, are usually held to be in personam. Such are actions to cancel and rescind contracts, to reform instruments, to enforce specific performance of contracts, and to quiet title to property.

█ The reason for the rule in these and other classes of actions purely equitable, is that equity decrees ordinarily act only in personam and can in general have effect only as against parties personally served with process within the territorial jurisdiction of the court. 5 Pom.Eq.Jur. Sec. 15.

█. It was early held that the state could provide methods for the determination of title to land within its borders, and in the exercise of such power it could give to equity decrees, by legislative acts, the effect of judgments in rem which could be based upon service of process by publication, provided only that they did not deprive litigants of their constitutional right of due process of law. Hart v. Sansom, 110 U.S. 151, 3 S.Ct. 586, 28 L.Ed. 101; Roller v. Holly, supra; Overby v. Gordon, supra; Arndt v. Griggs, supra.

A weakness of equity courts was the fact that they could act only upon the person, but their power has been reinforced in many states by the enactment of statutes

which give to their decrees the effect of conveyance of real estate or which authorize the court to appoint a master to convey real property in behalf of the defendant. Such a statute is Sec. 117-117, N. M.Sts.1929, as follows: "In all actions relating to real estate, where it becomes necessary for the conveyance of the same by either party to the action the court may enter a decree, which of itself shall operate as a good and sufficient conveyance of the real estate in question or may appoint any proper person to make such conveyance for and on behalf of the party."

The case, therefore, does not depend upon the general powers of a court of equity, but upon the authority of the state over titles to real estate within its limits, and what jurisdiction, if any, in view of the statutes quoted, the district court had to reform the lease. Arndt v. Griggs, supra.

In Silver Camp Min. Co. v. Dickert, 31 Mont. 488, 78 P. 967, 67 L.R.A. 940, 3 Ann.Cas. 1000, it was held that actions to compel specific performance of a contract to convey real estate located within the state was strictly in personam, and the general statutory authority to serve process by publication in all cases against nonresidents, did not authorize the court to enter a decree of specific performance. It does not appear that Montana had a statute similar to Sec. 117-117, supra, nor whether the court's conclusion would have been different if it had.

But the weight of authority seems to be in favor of the power of courts of equity to enforce specific performance of such contracts by decree, or the appointment of a master to convey in behalf of a nonresident served with process by publication in states having statutes similar to those of New Mexico, regarding service of process on nonresidents and the effect of decrees upon titles to real estate. Hollander v. Central Metal & Supply Co., 109 Md. 131, 71 A. 442, 23 L.R.A.,N.S., 1135, and annotations; Clem v. Givens, Ex'r, 106 Va. 145, 55 S.E. 567; Atlantic Seaboard Natural Gas Co. v. Whitten, 315 Pa. 529, 173 A. 305, 93 A. L.R. 615; and annotation at page 621; Boswell v. Otis, 9 How. 336, 13 L.Ed. 164; Hart v. Sansom, supra; Light v. Doolittle, 77 Ind.App. 187, 133 N.E. 413; Hawkins v. Doe, 60 Or. 437, 119 P. 754, Ann.Cas. 1914A, 765; McVoy v. Baumann, 93 N.J. Eq. 360, 117 A. 717; 5 Pom.Eq.Jur. Secs. 13 and 15.

Actions to compel specific performance of contracts for the sale of real estate, with service of process on nonresidents by publication, are authorized by statute in New Mexico (Ch. 9, N.M.L.1933); though the weight of authority would seem to authorize such actions by force of Sec. 117-117 and 105-308, N.M.Sts.1929.

Likewise, courts of equity, if authorized by statute, are held to have the power to cancel or rescind deeds and contracts which affect the title of property within the state, on constructive service.

It is suggested in Hart v. Sansom, 110 U.S. 151, 3 S.Ct. 586, 588, 28 L.Ed. 101, that it would doubtless be within the power of

a state within which land lies, to provide by statute that if the defendant is not found within the state and refuses to cancel a deed (if subject to cancelation in equity), that it could be done in his behalf by a trustee appointed by the court for that purpose. It is stated in the opinion:

"Generally, if not universally, equity jurisdiction is exercised in personam, and not in rem, and depends upon the control of the court over the parties, by reason of their presence or residence, and not upon the place where the land lies in regard to which relief is sought. Upon a bill for the removal of a cloud upon title, as upon a bill for the specific performance of an agreement to convey, the decree, unless otherwise expressly provided by statute, is clearly not a judgment in rem, establishing a title in land, but operates in personam only * * *.

"It would doubtless, be within the power of the state in which the land lies to provide by statute that if the defendant is not found within the jurisdiction, or refuses to make or to cancel a deed, this should be done in his behalf by a trustee appointed by the court for that purpose. * * * But in such a case, as in the ordinary exercise of its jurisdiction, a court of equity acts in personam, by compelling a deed to be executed or canceled by or in behalf of the party. It has no inherent power, by the mere force of its decree, to annul a deed or to establish a title."

The following cases hold that when authorized by statute, courts of equity may cancel conveyances of land as against the grantees who are nonresidents of the state, in an action in which process was served by publication, American Trust Co. v. Kaufman, 287 Pa. 461, 135 A. 210; McLaughlin v. McCrory, 55 Ark. 442, 18 S.W. 762, 29 Am.St.Rep. 56; Robinson v. Kind, 23 Nev. 330, 47 P. 1, 977; Bunting v. Creglow, 40 N.D. 98, 168 N.W. 727.

It is the usual practice in actions to cancel documents affecting title, for the decree to provide that they are by the force of the decree canceled. But instruments may be effectively canceled by compelling a re-conveyance if the court has jurisdiction of the person. Wright v. Wright, 51 N.J.Eq. 475, 26 A. 166; Firebaugh v. Bentley, 65 Or. 170, 130 P. 1129; Black on Cancellation & Rescission, Secs. 686 and 687.

In the absence of statutory authority a decree of cancellation is in personam, and therefore not permissible under constructive service of process. Whether the court may by authority of Sec. 117-117, N.M.Sts. 1929, supra, provide by the terms of the decree that it shall operate as a re-conveyance, or appoint a master to re-convey in behalf of the absent party, we need not decide.

"* * * The decree (of chancery) never stood as a title in the place of an actual conveyance by the defendant; nor was it ever carried into effect by any officer acting in the defendant's name. It has also been shown that this original character of equitable remedies and decrees

has been greatly modified by statute in the United States. Under this legislation decrees are made to operate of themselves, wherever necessary, as a sufficient title; they either transfer the estate by their own force, without any actual conveyance from the defendant, or they are carried into execution by officers purporting to act in the defendant's name and stead." Pom.Eq. Jur. Sec. 428.

Also see Id. Secs. 1317 and 1318.

Relator cites Rosser v. Rosser, 42 N.M. 360, 78 P.2d 1110, as authority for his contention that the district court has no jurisdiction to reform the lease in suit. We held in that case that an action to cancel a real estate mortgage was in personam, and not in rem; and that constructive service upon the named mortgagee, a nonresident, did not give the court jurisdiction to cancel the mortgage.

The Supreme Court of Oklahoma in Continental Gin Co. v. Arnold, 66 Okl. 132, 167 P. 613, 617, L.R.A.1918B, 511, concluded that under a statute which provides for constructive service of process "in actions which relate to, or the subject of which is, real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent therein * * * and such defendant is a nonresident of the state," that a decree canceling a real estate mortgage was authorized. The statute is specific, and the conclusion was correct, if it affords due process of law. But we have no such statute. In this state a mortgage of real estate is only security for the payment of a debt and it conveys no interest in or title to the land, Alexander v. Cleland, 13 N.M. 524, 86 P. 425; Cleveland v. Bateman, 21 N.M. 675, 158 P. 648, Ann.Cas.1918E, 1011; and is but an incident of the note which it purports to secure, Williamson v. Falkenhagen, 178 Minn. 379, 227 N.W. 429. The note and the defendant were not within the State of New Mexico, and therefore not subject to the jurisdiction of the court. It was held in Loaiza v. Levy, 85 Cal. 11, 24 P. 707, 9 L.R.A. 376, 20 Am.St.Rep. 197, that contracts, the execution of which was obtained through fraud, in the consummation of which, notes payable to a resident of California, secured by a mortgage on lands in that state were delivered, and which had been impounded by the court in that suit, could, with the notes and mortgage securing them, be canceled, though service of process upon the nonresident defendants was by publication. The court stressed the fact that the whole transaction had been consummated in California, and that the notes and cash consideration were impounded in the suit. But see Williamson v. Falkenhagen, supra.

It is true that under our statute providing for quieting title, (Sec. 105-2001, N.M. Sts.1929) that title may be quieted "against any person * * * claiming title thereto [to the lands in suit] * * * or lien thereon;" and that a mortgage by force of the statute, is a cloud upon the title against which the decree will operate. Tracy v. Wheeler, 15 N.D. 248, 107 N.W. 68, 6 L.R.A.,N.S., 516 and note, but that is be-

cause the court is constructively in control of the title, by virtue of the statute.

But a decree in an action to cancel a mortgage in this state does not have the effect of establishing any estate, right, title or interest in real property. The title is not in issue, or acted upon by the decree. Sec. 117-117, N.M.Sts.1929, supra, could have no bearing on such a case because the execution of a conveyance could convey no interest in the title, for the mortgagee has none. Assuming that the legislature could authorize the service of process by publication in such actions consistently with the due process clause of the 14th Amendment to the Constitution of the United States, U.S.C.A., no such statute has been enacted in New Mexico, and general rules of equity apply. It is an action strictly in personam, and requires personal service of process. Pom.Eq.Jur.Sec. 171.

We have perhaps given the question of specific performance of contracts and cancelation of instruments undue consideration; but the principle of law involved in the question of reformation of contracts is identical and the cases on reformation of contracts, in which the identical question was an issue, are not numerous.

■ Regarding the reformation of the lease of plaintiff below it is quite apparent that the trial court cannot reform the lease by substituting different rentals. Whether the rental should be $250 or $350 per month does not affect either the term of the lease or the title to the real estate. The effect would be to establish a debt against relator by a decree rendered without personal service of process within this state. This can no more be done consistently with due process of law, than to give credit upon future rentals for the alleged excessive payments made in the past, for which judgment is asked. Such an action is strictly in personam.

The complaint does not ask for the reformation of the lease with respect to the option to extend it after ten years. It alleges that the relator "has failed to deliver to plaintiff an assignment of the right or option to renew the lease as provided, etc." and the prayer is "that the right of renewing said lease, as is provided for in * * * the original lease be assigned and transferred to plaintiff." It is an action to enforce specific performance of the original parol agreement to sublease. But both parties treat the action as one to reform the lease in that respect.

■ It is quite true that a leasehold for a term of years is an interest in land, as respondent contends. United States National Bank v. Miller, 122 Or. 285, 258 P. 205, 58 A.L.R. 339; Howard v. Manning, 79 Okl. 165, 192 P. 358, 79 A.L.R. 819; Roberts v. Lehl, 27 Colo.App. 351, 149 P. 851; Moss Point Lbr. Co. v. Board of Supervisors, 89 Miss. 448, 42 So. 290, 873; Hayes v. City of Atlanta, 1 Ga.App. 25, 57 S.E. 1087; German-American Sav. Bank v. Gollmer, 155 Cal. 683, 102 P. 932, 24 L.R.A., N.S., 1066, in which it was held that an action will lie to quiet title to a leasehold as an interest in land. 35 C.J. "Landlord

& Tenant" Sec. 47. But notwithstanding it is an interest in land, yet at the common law it was personalty, in the sense that it was held to be a chattel and governed generally by rules applicable to personal property, and we have so held. American Mortgage Co. v. White, 34 N.M. 602, 287 P. 702; and it was so assumed in Terry v. Humphreys, 27 N.M. 564, 203 P. 539.

Relator insists that as a leasehold is personal property that an action to specifically enforce a contract to make or to reform a lease is an action strictly in personam. If a lease is personalty (and we hold that it is) it does not follow for that reason alone that a court has not the same jurisdiction over it as it has over real property. First Trust Co. v. Matheson, 187 Minn. 468, 246 N.W. 1, 87 A.L.R. 478 and annotation. It depends upon whether the jurisdiction of the district court, as a court of equity, has been extended by an act of the legislature to include an action in the nature of an action in rem for such purposes; assuming that it can be done consistently with the due process clause of the 14th amendment to the Constitution of the United States, U.S.C.A.; a question we need not decide, but there is authority supporting it. Wagner v. Glick, 177 Iowa 623, 159 N.W. 233.

We have statutes which provide for quieting title to lands, (Sec. 105-2001, N.M.Sts.1929); for the sale of real estate of decedents to pay debts (Sec. 105-2101, N.M. Sts.1929); for partition of real estate (Sec. 105-1901, N.M.Sts. 1929); for the attachment of real and personal property (Sec. 105-1601, N.M.Sts.1929); to compel the specific performance of contracts of sale of real estate (Ch. 9, N.M.L.1933); each providing for decrees based upon constructive service of process. But no specific provision is made for the reformation of contracts concerning either real or personal property, or for the enforcement of specific performance of an agreement to lease for a term of years. The respondent contends that the district court is authorized to reform the lease in suit or enforce the specific performance of the contract to lease, in an action in the nature of an action in rem, by Secs. 117-102 and 117-117, N.M.Sts.1929; that the lease in question is by virtue of these two statutes, real estate; and that the district court is authorized to enter a decree which will have the effect of a sublease of the real property in question from relator to respondent; or what amounts to the same thing as he contends, reform the lease so that it will be identical with relator's lease from the owner of the property.

These statutes are respectively:

"The term real estate, as used in this chapter, shall be so construed as to be applicable to lands, tenements and hereditaments, including all real movable property." Sec. 117-102 N.M.Sts.1929.

"In all actions relating to real estate, where it becomes necessary for the conveyance of the same by either party to the action the court may enter a decree, which of itself shall operate as a good and suffi-

cient conveyance of the real estate in question or may appoint any proper person to make such conveyance for and on behalf of the party." Sec. 117-117, N.M.Sts.1929.

Sections 117-101 to 117-107 inclusive, are a part of an original act of the 12th of January 1852, Laws 1851–52, p. 372, entitled "Conveyances," and now appear in Ch. 117 of the Statutes of 1929, entitled "Real Estate." Sec. 117-102, originally read, "The term real estate as used in this act shall be so construed, etc."

The word "act" was changed to "Chapter" in the compilation of 1915, which included therein section 117-117, enacted in 1901, a part of an act on an entirely different subject. So that the definition of "real estate" as contained in Sec. 117-102, could not originally have been intended to control the meaning of the same word in Sec. 117-117.

The New Mexico Code of 1915 was a codification of existing laws and did not assume to add laws or change the meaning of existing laws. The repealing and saving clause states: "The provisions of the foregoing sections taken or adopted from existing statutes, shall be construed as continuations thereof, and not as new enactments."

We stated in Wells v. Dice et al., 33 N. M. 647, 275 P. 90, 91, regarding a similar question: "The history of the Code, which in general is well known to the profession, is set forth in the preface to the book. The 'plan' is said to have been 'that con-flicting sections should be harmonized but that no change in the law should be made.' If this plan was followed, as our experience and research indicate to be the fact, it is evident that all sections embodied in the codification were, literally or in substance, taken or adopted from existing statutes. Nothing in the Code is to be construed as a 'new enactment,' and each section is to be interpreted, as has been our constant practice, with reference to the date and context of its origin and development. Other provisions of the repealing and saving clause are consistent with the view."

It would appear that the word "real estate" as used in Sec. 117-117, should be defined according to its peculiar and appropriate meaning in law.

"In the construction of statutes, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:

"First. Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such meaning. * * *" Sec. 139-102, N.M.Sts.1929.

A lease for a term of years is a chattel, and not "real estate" in the legal sense, and passes to the legal representatives of the lessee upon his death. Orchard v. Wright Etc. Co., 225 Mo. 414, 125 S.W.

486, 20 Ann.Cas. 1072. But if we assume that "real estate" as defined in Sec. 117-102 applied to its use in Sec. 117-117, the result will be no different.

It is quite probable that the act of the 12th of January 1852 was adopted from the laws of Missouri, or it is so stated by the Territorial Court in Armijo v. N. M. Town Co., 3 N.M. 427, 5 P. 709. In Orchard v. Wright Etc. Co., supra, in construing a statute which provided that a widow should have a dower interest in leaseholds for terms of twenty years or more, in which it was contended that under this statute such leaseholds were real estate, the Supreme Court of Missouri held otherwise, stating that there were numerous statutes in Missouri defining "real estate," each for a certain and different purpose. Regarding one of these statutes, quite similar to that of New Mexico, it was stated [225 Mo. 414, 125 S.W. 493, 20 Ann.Cas. 1072]: "Section 936 [Mo.St.Ann. § 3052, p. 1886] is found in the chapter concerning 'Conveyances of Real Estate,' and reads: 'The term "real estate," as used herein, shall be construed as coextensive in meaning with lands, tenements and hereditaments, and as embracing all chattels real.' 'Chattels real include estates for years, at will, by sufferance, and various interests of uncertain duration.' Rapalje & Lawr.Law Dict. p. 200, tit. 'Chattel.' They are to be distinguished, on the one hand, from things which have no concern with the land, such as mere movables and rights connected with them, which are chattels personal, and, on the other hands, from a freehold, which is realty. The section of the statute quoted clearly says that for purposes of conveyance a leasehold is to be considered as real estate. But does it not mean more than that? Does it not mean that a leasehold is to be assigned or conveyed by a quitclaim or a warranty deed or mortgage, just as any other interest in land is to be conveyed? We think it means only that. It does not attempt to convert what was personal property at common law into real estate."

Regarding another statute, that court said: "Section 4160 [Mo.St.Ann. § 655, p. 4899] is found in the chapter on 'Laws,' in the article concerning the 'Construction of Statutes,' and so far as applicable it reads: 'The construction of all statutes of this state shall be by the following additional rules, unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute * * * ninth, the terms "real property" or "premises," or "real estate" or "lands," shall be deemed to be coextensive with lands, tenements and hereditaments.' * * * We will assume, though it is a liberal assumption, that this section is meant to be a definition of the words 'real estate' wherever used in any of the statutes * * *. If it means to say that a leasehold or a chattel real is to be held to be real estate, that meaning is to be found in the words 'lands, tenements and hereditaments.'"

The Missouri court, after exhaustively reviewing the authorities on the question, a repetition of which is unnecessary here, held that the words "lands, tenements and hereditaments" did not include a leasehold interest for a term of years, the court stating: "Before leaving this branch of the case, it is proper to remark that we do not hold that the leasehold estate was converted into real estate by section 2933 [Mo. St.Ann. § 318, p. 202], or any other statute. What we do hold is that by section 2933 the widow is given dower in a leasehold for 20 years or more, which must be assigned to her as in real estate, and that such dower interest cannot be sold to pay her deceased husband's debts. We are of the opinion that the leasehold, in spite of these statutes, is personal property, and that so much of it as is not given to the widow by section 2933 passes to the administrator, upon the death of the lessee intestate, * * *."

We conclude that the action in question is one strictly personal, and that in the absence of personal service of summons within this state, the district court of Curry County is without jurisdiction to enter a decree adjudicating the issues.

It is urged that as a writ of prohibition is not a writ of right, it should be denied because the relator has a plain and adequate remedy by appeal. The contention is overruled upon the authority of Hammond v. District Court, 30 N.M. 130, 228 P. 758, 39 A.L.R. 1490, in which the exact question was ruled against the contention of respondent.

The respondent's demurrer should be, and is, overruled. The writ of prohibition will be made permanent.

It is so ordered.

BICKLEY, C. J., and ZINN, SADLER, and MABRY, JJ., concur.